The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 19, 2020

## 2020COA165

**No. 19CA1635, *Brooktree Village Homeowners Ass'n, Inc. v Brooktree Village, LLC* — Construction Law — Breach of Implied Warranty; Real Property — Common Interest Communities — Powers of Unit Owners' Association — Litigation or Administrative Proceedings — Standing**

A division of the court of appeals holds that a homeowner's association has standing to assert, on behalf of its members, implied warranty claims arising from construction defects in the common interest community's common areas without first obtaining assignments of claims from the homeowners. In addition, the division considers for the first time in Colorado whether a homeowner's association may assert such implied warranty claims against a successor developer and builder, even though the homeowner's association did not acquire the common areas from the successor developer, the successor developer and builder never

owned the common areas, and fewer than all of the homeowner's association's members directly purchased their townhomes from the successor developer. The division concludes that a homeowner's association may assert such claims.

Court of Appeals No. 19CA1635
El Paso County District Court No. 17CV31301
Honorable Timothy Schutz, Judge

Brooktree Village Homeowners Association, Inc., a Colorado non-profit
corporation,

Plaintiff-Appellee,

v.

Brooktree Village, LLC, a Colorado limited liability company, and Rivers
Development, Inc., a Colorado corporation,

Defendants-Appellants.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Navarro and Tow, JJ., concur

Announced November 19, 2020

Kerrane Storz, P.C., Heidi E. Storz, Michael J. Lowder, Rebekah B. Watada,
Broomfield, Colorado, for Plaintiff-Appellee

Lorber, Greenfield & Polito, LLP, Thomas F. Olsen, Louis W. Horowitz, Denver,
Colorado, for Defendants-Appellants

¶ 1      The Brooktree Village Townhomes (the development) had more than its share of troubles.  Its original owner, Combest Construction, sought protection under the Bankruptcy Code after it had completed and sold several townhomes to residential purchasers, but before it could complete construction at the development.  After Combest's lender took possession of the development, the lender conveyed the common areas to Brooktree Village Homeowners Association, Inc. (Association), the development's homeowner's association, which Combest had formed.

¶ 2      A second developer, Brooktree Village, LLC (Developer), later acquired the remaining undeveloped portions of the development, other than the common areas.  A construction company affiliated with Developer, Rivers Development, Inc. (Builder), completed construction of the development.  Developer sold all the newly constructed townhomes to individual homeowners.

¶ 3      After discovering construction defects throughout the development, Association sued Developer and Builder, asserting that portions of Builder's construction work were defective.  Association sought damages for the cost of repairing the

1

construction defects in the common areas, as well as the cost of repairing the damage in one of the townhomes caused by construction defects in the common areas.

¶ 4    Association asserted the claims on behalf of itself and its member homeowners, pursuant to section 38-33.3-302(1)(d), C.R.S. 2020, under theories of breach of implied warranty, negligence, and negligence per se.

¶ 5    At the conclusion of an eight-day trial, a jury found Developer and Builder liable for breach of implied warranty and negligence and awarded Association $1,850,000 in damages. (The trial court combined Association's negligence and negligence per se claims.)

¶ 6    The jury also found that Association was responsible for ten percent of the damages under a comparative negligence theory. But the jury verdict form did not break down Association's damages between its breach of implied warranty and negligence claims. The trial court awarded the entire $1,850,000 to Association on the breach of implied warranty claim, reasoning that comparative negligence does not apply to breach of implied warranty claims.

¶ 7    On appeal, Developer and Builder argue that the trial court erred in entering the judgment against them. Among other

arguments, Developer and Builder raise an issue of first impression in Colorado — whether Association had the right to assert implied warranty claims against them even though Association had not acquired the common areas from Developer, Developer never owned the common areas, and a majority of Association's members had not purchased their townhomes from Developer.

¶ 8    We hold that Association had standing to assert the implied warranty claims. Although we also hold that the trial court erred in admitting evidence regarding damage in one of the townhomes, we conclude that the error was harmless. Therefore, we affirm the judgment.

I.    Background

¶ 9    The development is a residential common interest community as that term is defined in the Colorado Common Interest Ownership Act (CCIOA). *See* § 38-33.3-103(8), C.R.S. 2020. Combest established Association under the CCIOA. The members of Association are the owners of the townhomes at the development. Association owns and manages the common areas of the development for the use and benefit of its members pursuant to the

Declaration of Covenants, Conditions, Restrictions, and Easements of Brooktree Village Townhomes (the Declaration).

¶ 10    According to the Declaration, the development was to consist of fourteen buildings housing fifty-two townhomes. Before going out of business, Combest completed the grading at the development site. Combest, however, only constructed two of the buildings, consisting of seven townhomes, and approximately half of the roadways. Combest sold those seven townhomes to residential purchasers in 2007 and 2008.

¶ 11    After Combest filed for bankruptcy protection, Combest's lender took possession of the development and conveyed the common areas to Association. The undeveloped areas of the development remained untouched until 2012, when Developer acquired the entirety of the development other than the common areas and the seven townhomes that Combest had built and sold.

¶ 12    Builder resumed construction at the development, following Combest's original construction plans and the scope of the development described in the Declaration. Builder formed Developer to market and sell the townhomes that Builder built. Developer contracted with Builder to construct the remaining twelve

buildings, finish the roadways, and complete the remaining work at the common areas of the development. Those twelve buildings consisted of forty-five townhomes.

¶ 13 By 2015, Builder completed construction at the development. Developer sold the forty-five townhomes to residential purchasers in 2012 and 2013.

¶ 14 As early as 2012, owners of the newly constructed townhomes began reporting construction defects to Builder. Within the one-year warranty period specified in their purchase agreements with Developer and Builder, several townhome owners presented Builder with claims for repairs caused by those construction defects.

¶ 15 Association served Developer and Builder with a notice of claim pursuant to section 13-20-803.5, C.R.S. 2020, on behalf of its members and itself in February 2017. After it was unable to resolve its dispute with Developer and Builder regarding the construction defects described in the notice of claim, Association filed suit "on behalf of itself and on behalf of its members" in May 2017.

¶ 16 The construction defects described in Association's complaint primarily consisted of improper site grading and drainage across

the development, which, according to Association, caused water accumulation and intrusion, concrete flatwork settling and cracking, and heaving and movement of concrete basement slabs, among other problems. Association sought damages in the amount of the cost of repairing the construction defects in the common areas. In addition, Association sought damages to repair the damage to one townhome — that of owner Halley Rumfelt — attributable to construction defects in the common areas.

¶ 17    As noted above, at the conclusion of trial, the jury awarded $1,850,000 in damages against Developer and Builder on Association's implied warranty and negligence claims.

¶ 18    On appeal, Developer and Builder allege six errors by the trial court:

¶ 19    First, allowing Association to pursue claims for breach of implied warranty against Developer and Builder and, relatedly, providing jury instructions and a verdict form that misstated the law of breach of implied warranty and did not allow the jury to determine the threshold question of whether Association could assert implied warranty claims even though not all of its members had implied warranties from Developer and Builder.

¶ 20     Second, not reducing the jury's damage award by the percentage of Association's comparative negligence.

¶ 21     Third, declining to instruct the jury on the statute of repose and statute of limitations.

¶ 22     Fourth, declining to allow evidence or jury instructions on whether Association could assert claims on behalf of individual townhome owners without first obtaining assignments of claims from them.

¶ 23     Fifth, allowing Association to introduce "salacious" and irrelevant evidence.

¶ 24     Sixth, allowing testimony referring to nonparties.

## II.     Analysis

### A.     Implied Warranty

¶ 25     Developer and Builder contend that the trial court erred by allowing Association to pursue implied warranty claims against them on behalf of the members of Association.  Developer and Builder relatedly contend that the court erred by giving jury instructions and a verdict form that did not correctly state the law of implied warranty.  We are not persuaded.

### 1. Association's Standing to Assert Implied Warranty Claims on Behalf of Its Members

¶ 26    Developer and Builder assert that the trial court erred by allowing Association to pursue implied warranty claims against them for construction defects in the common areas because (1) Builder did not sell any of the townhomes at the development and (2) neither Developer nor Builder ever owned the common areas and fewer than half of Association's members purchased townhomes from Developer.  Developer and Builder further argue that, at most, any damage award to Association must be reduced by multiplying the amount of the award by the percentage of townhome owners in the development who purchased their townhomes directly from Developer (the direct purchasers).

¶ 27    Whether Association may bring implied warranty claims for defects in the common areas on behalf of its members is a question of law that we review de novo.  *Klingsheim v. Cordell*, 2016 CO 18, ¶ 14, 379 P.3d 270, 272; *see Forest City Stapleton Inc. v. Rogers*, 2017 CO 17, ¶¶ 6, 15-16, 393 P.3d 487, 492.

¶ 28    Colorado law reads an implied warranty of workmanlike construction and fitness for habitability into "agreements between

8

builder-vendors and purchasers for the sale of newly constructed buildings . . . .” *Carpenter v. Donohoe*, 154 Colo. 78, 83-84, 388 P.2d 399, 402 (1964). The implied warranty “arises from the contractual relation” between an entity that constructs and sells a newly constructed building and the purchaser. *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1045 (Colo. 1983). “Proof of a defect due to improper construction, design, or preparation is sufficient to establish liability in the builder-vendor” under an implied warranty theory. *Id.*

¶ 29 Because only persons in privity of contract with a builder or seller have implied warranties, the class of purchasers entitled to the protection of an implied warranty is limited to first purchasers. *Id.* Subsequent purchasers are not in privity with the builder or seller and, for this reason, cannot assert implied warranty claims. *H.B. Bolas Enters., Inc. v. Zarlengo*, 156 Colo. 530, 535, 400 P.2d 447, 450 (1965).

¶ 30 Acting on behalf of its members and itself, Association sued Developer, as the vendor that sold townhomes at the development starting in 2012, and Builder, as the entity that constructed townhomes and common areas at the development during that

time.  *See Utz v. Moss*, 31 Colo. App. 475, 478, 503 P.2d 365, 367 (1972).

a.    The Direct Purchasers Received Implied Warranties from Builder

¶ 31    Developer and Builder contend that Builder cannot be held liable for breach of implied warranty, even to the direct purchasers whose townhomes Builder constructed, because the direct purchasers bought their townhomes from Developer and not from Builder.  Thus, Developer and Builder argue, there is no contractual privity between the direct purchasers and Builder.  And, as noted above, only persons in privity with a builder or seller can assert implied warranty claims against them.

¶ 32    First, we are not persuaded there is no privity between the direct purchasers and Builder.  Both Developer and Builder signed the direct purchasers' purchase agreements.  In those agreements, Developer and Builder provided an express warranty and "Disclosures and Releases" to the direct purchasers.

¶ 33    Second, even if Builder had not been a party to the direct purchasers' purchase agreements, Builder constructed their townhomes.  "[T]he absence or presence of privity of contract, in the

technical meaning of that term, is not dispositive of all cases." *Id.* at 478, 503 P.2d at 367. The purpose of the privity requirement is to protect vendors from claims by "buyers who are not within the class of those reasonably intended to be protected when the product was offered for sale." *Id.* Where a builder "knows, or should know, that the intended purchaser and first occupant will not be [a] realty company, but rather the initial home owner, the implied warranty of workmanlike construction extends to that first purchaser." *Id.*

¶ 34    Here, Builder knew the townhomes it constructed at the development would be sold to individual owners. Builder created Developer primarily to market and sell the townhomes that Builder constructed at the development.

¶ 35    The relationship between Developer and Builder underscores why Builder can be held liable under an implied warranty theory. To allow Builder to shirk its responsibilities under implied warranties simply because an intermediary (here, an affiliate of Builder) conveyed the homes to the direct purchasers would be illogical, would be contrary to *Utz*, and could leave the direct purchasers without a remedy against the entity responsible for the defective construction.

11

¶ 36 Granted, even if they could not assert implied warranty claims against Builder, the direct purchasers could assert negligence claims against Builder. But claims for negligent construction are more difficult to prove than implied warranty claims. Negligence claims "require[] that a builder or contractor be held to a standard of reasonable care in the conduct of its duties to the foreseeable users of the property." *Cosmopolitan Homes,* 663 P.2d at 1045. A plaintiff in a negligence case involving construction defects "must establish defects in workmanship, supervision, or design as a responsibility of the individual defendant. Proof of defect alone is not enough to establish the claim. Foreseeability limits the scope of the duty, and the passage of time following construction makes causation difficult to prove." *Id.*

¶ 37 In contrast, the warranty of habitability "has been likened to strict liability for construction defects, and proof of a defect due to improper construction, design, or preparations is sufficient to establish liability in the builder-vendor." *Wall v. Foster Petroleum Corp.,* 791 P.2d 1148, 1150 (Colo. App. 1989).

¶ 38 For these reasons, Builder provided implied warranties to the direct purchasers.

12

### b. Association Has Standing to Pursue Implied Warranty Claims for Construction Defects in the Common Areas Even Though Neither Developer Nor Builder Ever Owned the Common Areas and Not All Members of Association Purchased Townhomes from Developer

¶ 39    The facts in this case are more complex than those in a typical construction defects case. In many construction defects cases, the developer of the common interest community directly conveyed the individual units to the original owners and directly conveyed the common areas to the homeowner's association. *See* Amy Brimah & Suzanne Leff, *Common Interest Conundrums* 2, https://perma.cc/D3DG-EX5Q. In these cases, the developer is in privity with the individual purchasers and the homeowner's association. *See Heritage Vill. Owners Ass'n, Inc. v. Golden Heritage Invs.*, 89 P.3d 513, 514 (Colo. App. 2004).

¶ 40    Here, the original developer sought bankruptcy protection, its lender took possession of the development, and the lender conveyed the common areas to Association. Although Builder completed construction at the development, neither it nor Developer ever owned the common areas. Additionally, at the time of Association's lawsuit, only twenty-three of the fifty-two townhome owners in the development were direct purchasers; the remaining twenty-nine

owners acquired their townhomes from Combest or previous townhome owners.

¶ 41    We agree with Developer and Builder that they are not in privity with Association and, thus, Association did not receive implied warranties from them.  We also agree with Developer and Builder that they are not in privity with the twenty-nine townhome owners who were not direct purchasers and who, therefore, did not receive implied warranties from them.

¶ 42    But the twenty-three direct purchasers bought their townhomes, which Builder constructed, directly from Developer.  Moreover, both Developer and Builder are parties to the direct purchasers' purchase agreements.  The direct purchasers are thus in privity with, and obtained implied warranties of workmanship and habitability from, Developer and Builder.  *See Cosmopolitan Homes*, 663 P.2d at 1045.

¶ 43    In addition, the direct purchasers, like all of Association's members, not only own their individual townhomes, but, as documented in their deeds, have easement rights to use the common areas.  Consequently, a construction defect located

14

anywhere in the common areas affects the rights of every owner in the development, including the direct purchasers.

¶ 44    Under the CCIOA, a homeowner's association has standing to "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community." § 38-33.3-302(1)(d).  Thus, a homeowner's association has standing to bring breach of implied warranty claims on behalf of itself and its members to obtain redress for construction defects in the common areas of the community.  *Heritage Vill.*, 89 P.3d at 515.  (Although *Heritage Village* specifically addressed claims for construction defects impacting "windows, decks, and floor slabs" of individual units, it also said that the homeowner's association had standing to assert claims for construction defects in the common areas on behalf of the homeowners.  *See id.* at 514-15.  Even if that language is dictum, it is a correct statement of the law and we apply it here.)

¶ 45    In addition, because "[u]nder the CCIOA, individual units are a part of the 'common interest community,'" a homeowner's association may bring a claim for breach of implied warranty to redress construction defects in individual units.  *Yacht Club II*

15

*Homeowners Ass'n, Inc. v. A.C. Excavating*, 94 P.3d 1177, 1180 (Colo. App. 2003). This is especially true where, as here, the damage in an individual unit is attributable to defectively constructed common areas.

¶ 46 For these reasons, the lack of privity between Association and Developer and Builder does not bar Association's implied warranty claims. Under section 38-33.3-302(1)(d), Association may assert implied warranty claims for construction defects in the common areas, regardless of whether the resulting damage appeared in the common areas or an individual townhome, based on the direct purchasers' implied warranty rights and rights to use the common areas. *See Heritage Vill.*, 89 P.3d at 515.

> c. Association May Recover Damages for Repair of All the Construction Defects in the Common Areas for Which Developer and Builder Are Responsible

¶ 47 Developer and Builder argue that, at most, Association can recover damages for repairing that percentage of the defectively constructed common areas representing the percentage of total townhomes at the development owned by the direct purchasers. But it would be unreasonable to discount the damages awardable for the construction defects in the common areas by the percentage

16

of townhomes not owned by direct purchasers. Such an apportionment would mean that Association could only recover damages for remediation of twenty-three fifty-seconds (approximately forty-four percent) of the construction defects in the common areas.

¶ 48 Repair of less than half of the construction defects in the common areas would not provide the direct purchasers (or the other townhome owners for that matter) with a meaningful remedy and would allow Developer and Builder to shirk their responsibility for remediating all the construction defects in the common areas for which they are responsible. For these reasons, a remedy resulting in repair of only a fraction of the defects in the common areas would be inadequate. But this would be the result if we accepted Developer and Builder's argument that Association cannot assert implied warranty claims to recover the cost of remediating all the construction defects in the common areas.

¶ 49 Thus, we hold that, under the CCIOA, a homeowner's association may recover from a successor developer or builder the entire cost of remediating construction defects in common areas where (1) the defects are attributable to the successor developer or

builder; (2) two or more of the association's members purchased their homes directly from the successor developer or builder; and (3) those members have rights to use the common areas — even if the successor developer or builder never owned the common areas.

## 2. Jury Instructions and Verdict Form

¶ 50 Developer and Builder contend that the trial court's jury instructions and verdict form "skipped over an essential element of the cause of action . . . [ — ] whether [an implied] warranty existed in the first place." We are not persuaded.

¶ 51 A trial court has a duty to correctly instruct the jury on matters of law. *Bedor v. Johnson*, 2013 CO 4, ¶ 8, 292 P.3d 924, 926. "To determine whether the trial court has performed this duty, we first review de novo the jury instruction at issue to assess whether the instruction correctly states the law." *Id.* A court commits error by giving an incorrect instruction "unless the error is cured by the instructions as a whole." *Waneka v. Clyncke*, 134 P.3d 492, 494 (Colo. App. 2005), *aff'd*, 157 P.3d 1072 (Colo. 2007).

¶ 52 If the instruction is correct, we review the court's decision to give a jury instruction for an abuse of discretion. *Bedor*, ¶ 8, 292 P.3d at 926. While pattern jury instructions are not law, they do

18

"carry weight and should be considered by a trial court." *People v. Garcia*, 2012 COA 79, ¶ 50, 296 P.3d 285, 292. We review a preserved objection to an erroneous jury instruction for harmless error. *Waneka*, 134 P.3d at 494.

¶ 53    The trial court modeled its breach of implied warranty jury instructions on the pattern jury instructions. The breach of implied warranty jury instructions in this case specifically stated that, to find Developer or Builder liable for breach of implied warranty, the jury must find that (1) they "entered into a contract with [Association's] members to construct a residence and related common area improvements which it sold to [Association's] members"; (2) Developer or Builder "gave possession of the residence and related common areas to [Association's] members"; and (3) the residence or common areas did not comply with the warranties implied by law.

¶ 54    Developer and Builder are correct that the questions on the verdict form regarding their liability on Association's implied warranty claim asked whether they "breached any of the implied warranties," but did not first ask whether such an implied warranty existed. However, in the absence of evidence of jury bias, we may

presume that the jury understood and heeded the trial court's instructions. *Vaccaro v. Am. Fam. Ins. Grp.*, 2012 COA 9M, ¶ 29, 275 P.3d 750, 758 (citing *People v. Ibarra*, 849 P.2d 33, 39 (Colo. 1993)). Logically, the jury could not have answered "yes" to the questions unless it also found that Developer or Builder owed duties under implied warranties. For this reason, we must assume that, in answering "yes" to these questions, the jury first found the existence of a contract and, thus, implied warranties.

### B. The Trial Court Did Not Err by Entering Judgment for the Full Amount of Association's Damages

¶ 55 Developer and Builder contend that the trial court erred by not reducing the jury's damage award by ten percent to reflect Association's comparative negligence. We disagree.

¶ 56 "The amount of damages to which a plaintiff is entitled is a matter within the sole province of the jury." *Nichols v. Burlington N. & Santa Fe Ry. Co.*, 148 P.3d 212, 217 (Colo. App. 2006). Thus, "[w]hen possible, trial courts must give effect to a jury's verdict." *Id.* While, pursuant to section 13-21-111(1), C.R.S. 2020, damages awarded for negligence "shall be diminished in proportion to the amount of negligence attributable to the person" who recovers, such

a diminution does not apply to claims for breach of implied warranty.

¶ 57    As noted above in Part I.A.1.a, implied warranty claims are "likened to strict liability for construction defects . . . ." *Wall*, 791 P.2d at 1150.  That is, "proof of a defect due to improper construction, design, or preparations is sufficient to establish liability" on the part of a builder-vendor and, for this reason, the concept of comparative fault is foreign to claims for implied warranty.  *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1169 (Colo. App. 2010) (quoting *Wall*, 791 P.2d at 1150); *cf. Guardian Title Co. v. Mitchell*, 2002 UT 63, ¶ 2, 54 P.3d 130, 131 ("[T]he tort principle[] of comparative negligence . . . do[es] not apply to contract actions.").

¶ 58    In entering judgment for Association, the trial court stated that "the judgment on the negligence claim will be reduced by ten percent, the percentage of negligence attributable to the plaintiffs."  But, on the breach of warranty claim, "the amount of judgment will be for the full amount of the damage award . . . ."  Because Association was entitled to "the full amount of the damage award" on the breach of implied warranty claim, the court entered

judgment in favor of Association in the amount of $1,850,000, with no reduction for comparative negligence.

¶ 59    We discern no error in the amount of the judgment. If Association had prevailed only on its negligence claim, but not on its implied warranty claim, the judgment would have needed to reflect the ten percent reduction for Association's comparative negligence. However, because the jury also found that Association prevailed on its breach of implied warranty claim — to which comparative fault does not apply — Association is entitled to a judgment in the full amount the jury awarded.

C.    The Trial Court Did Not Err by Refusing to Instruct the Jury on the Statute of Repose or the Statute of Limitations

¶ 60    Developer and Builder contend that the trial court erred by refusing to instruct the jury on the statute of repose, which, they argue, barred Association's claims for construction defects in the roadways that Combest built. In addition, Developer and Builder contend that the court should have given the jury a similar instruction on the statute of limitations for Association's claim for damage to those roadways allegedly caused when Builder drove construction equipment over them. We disagree with Developer and

22

Builder's contention that the trial court should have provided jury instructions on the statute of repose and the statute of limitations.

¶ 61     A trial court has a duty to correctly instruct the jury on the law. *Schuessler v. Wolter*, 2012 COA 86, ¶ 9, 310 P.3d 151, 158. We review "for abuse of discretion a trial court's decision not to give a particular jury instruction.  A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* at ¶ 10, 310 P.3d at 158.  "[A] judgment will not be reversed for refusal to give requested instructions where there was not resulting substantial, prejudicial error." *Id.* at ¶ 11, 310 P.3d at 158.

    1.    Association Conceded that Its Original Claims Did Not Encompass the Roadways that Combest Constructed

¶ 62     Although Developer and Builder tendered jury instructions on the statute of repose and the statute of limitations, those instructions addressed a nonissue.  At that time, Association had not pleaded any claim relating to the roadways that Combest constructed.

¶ 63     As discussed above in Part I, Combest constructed approximately half of the roadways in the development between

23

2007 and 2008. Builder, under the direction of Developer, constructed the remaining roadways beginning in 2012.

¶ 64 In its complaint, Association asserted claims for negligence and breach of implied warranty regarding Builder's construction of the development, including the roadways within the development. The complaint did not distinguish between the roadways that Combest constructed and those that Builder constructed.

¶ 65 But, at trial, Association conceded that any claim for defective construction of a pre-2009 roadway was "barred by the statute of repose." (A statute of repose "limits the right to bring a claim to a specific time period that begins to run not when the claim accrues, but when the defendant's last culpable act or omission takes place." *Lewis v. Taylor*, 2016 CO 48, ¶ 22, 375 P.3d 1205, 1209.) Following that concession, Association advised the trial court that, after the close of evidence, it planned to move "to amend the Complaint to conform to the evidence based on the testimony we received here about the construction traffic damaging [the roadways that Combest constructed]." Thus, at that point of the trial, the parties and the court knew that none of the claims in the case involved a roadway that Combest constructed.

¶ 66    For reasons we cannot determine from the record, however, Association never followed up on its representation that, later in the trial, it would move for leave to assert claims for damage to the roadways that Combest constructed.  No party has pointed to, and we cannot find, any evidence in the record indicating that Association ever filed such a motion, much less that the trial court granted one.  Thus, Association's claims, as modified by its concession, did not encompass damage to the roadways that Combest constructed.

¶ 67    Moreover, on the seventh day of trial, Association informed the trial court that it was no longer alleging that any of the roadways were "defectively installed."  Instead, Association announced that its claims concerning the roadways were limited to allegations that Builder damaged the roadways by driving "construction traffic" over them.  Association did not specify whether its generic reference to "roadways" included roadways that Combest constructed, however.

¶ 68    But we find no indication in the record that Association's claims were ever amended to include a claim for damage caused when Builder drove construction vehicles over roadways that Combest built.  (Although, in its supplemental trial brief,

25

Association sought to assert a new theory of liability, based on Developer's and Builder's status as special declarants with maintenance responsibilities, the brief does not mention damage to any roadways that Combest constructed.)

¶ 69    In light of these facts, when Developer and Builder tendered their proposed jury instructions on the statute of repose and the statute of limitations, the case did not include any claim concerning roadways that Combest constructed.  Because Developer and Builder's statute of repose and statute of limitations instructions related at most to claims that were hypothetical at the time Developer and Builder tendered them, the court did not abuse its discretion by declining to provide the instructions.

¶ 70    But the statute of limitations analysis does not end here because Developer and Builder appear to argue that, regardless of the claims properly in the case, the trial court erred by allowing Association to present evidence that Builder's construction vehicles damaged roadways at the development.  We turn to this issue next.

### 2. Developer and Builder Did Not Preserve Their Arguments Regarding Association's Evidence or Argument Concerning Construction Vehicle Damage to the Roadways

¶ 71 Although the "construction traffic" claim was never properly in the case, Developer and Builder contend that the trial court erred by allowing Association to introduce evidence that Builder's construction vehicles damaged roadways at the development and to refer to such damage in closing argument. Even though the trial court admitted evidence concerning roadway damage, Developer and Builder failed to contemporaneously object to the admission of such evidence and to the references to such road damage in the closing argument of Association's counsel. Thus, this issue was not preserved for appeal and we do not consider it. *See Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 600 (Colo. App. 2007) ("If a party makes no contemporaneous objection to the introduction of evidence, we will not review the alleged error on appeal.").

### D. Because an Assignment of Claims Is Not Required Under the CCIOA, the Trial Court Did Not Err by Refusing to Allow Testimony, Argument, or Jury Instructions Regarding Assignments

¶ 72 Developer and Builder assert that the trial court erred by allowing Association to assert claims for construction defects

affecting individual townhomes in the absence of assignments of such claims from the owners of those townhomes. (Recall that, as noted above in Part I, Association sought damages on behalf of itself and its members for construction defects that manifested in the common areas and in Ms. Rumfelt's townhome.) We disagree.

¶ 73 Association owns and is responsible for maintaining the common areas of the development. In contrast, each townhome owner owns, and is responsible for maintaining, his or her townhome. Because Association owns the common areas, but not the townhomes, Developer and Builder argued at trial that, while the owners would have standing to pursue construction defect claims for damage in their own townhomes, it is unclear under *Yacht Club II* whether Association has standing to bring such claims on behalf of the owners without having obtained assignments of claims from the owners.

¶ 74 The trial court rejected this argument. The court first noted that Association was not claiming damage in individual townhomes unrelated to construction defects in the common areas. Rather, Association alleged that the damage in the Rumfelt townhome was a "manifestation" of grading and drainage defects in the common

28

areas. Second, the court said that, in *Yacht Club II*, the division acknowledged that the purpose of section 38-33.3-302(1)(d) was to "enabl[e] Association to represent more effectively its owners in such matters as construction defects, avoiding the necessity of assignment of claims . . . ." Finding no language in section 38-33.3-302(1)(d) requiring an assignment of such claims as a condition precedent for Association's assertion of its implied warranty claims, the court concluded that it "should not graft such a requirement into the statutory language."

¶ 75 We agree with the trial court's reasoning. To the extent Association presented evidence of damage impacting individual townhomes, *Yacht Club II* is clear: "[S]ection 38-33.3-302(1)(d) confers standing upon associations to pursue damage claims on behalf of two or more unit owners with respect to matters affecting their individual units." *Yacht Club II*, 94 P.3d at 1180. The only limitation on such an action is that "the matter be one 'affecting the common interest community.'" *Id.* And, "[u]nder the CCIOA, individual units are a part of the 'common interest community.'" *Id.*; *see also Heritage Vill.*, 89 P.3d at 515 (holding that the CCIOA and *Yacht Club II* "make clear that the Association has standing to

29

assert claims of individual unit owners"). But even if individual units were not considered part of the "common interest community" under the CCIOA, here, the damage in the Rumfelt townhome arose from construction defects in the common areas.

¶ 76 Although the division in *Yacht Club II* did not consider whether a homeowner's association has standing to assert a claim on behalf of its members for damages resulting from construction defects in common areas, the reasoning of *Yacht Club II* applies to cases involving such damages. If a homeowner's association may recover damages to repair construction defects in individual units, because those units are part of the "common interest community," then the association has an even stronger argument for recovery of damages for repair of construction defects in the common areas within the common interest community that its members have the right to enjoy. *See Heritage Vill.*, 89 P.3d at 514-15 (holding that a homeowner's association has standing to assert claims on behalf of its members for construction defects involving windows, decks, and floor slabs at individual units because they are part of the "common interest community").

¶ 77 Moreover, Developer and Builder do not provide any authority holding that a homeowner's association lacks standing to assert, on behalf of its members, claims relating to construction defects in the common areas absent assignments of claims from its members.

¶ 78 The trial court's reasoning finds additional support in decisions from other states. *See Lakeview Reserve Homeowners v. Maronda Homes, Inc.*, 48 So. 3d 902 (Fla. Dist. Ct. App. 2010), *aff'd,* 127 So. 3d 1258 (Fla. 2013); *Briarcliffe W. Townhouse Owners Ass'n v. Wiseman Constr. Co.*, 454 N.E.2d 363 (Ill. App. Ct. 1983).

¶ 79 As here, the homeowners in *Briarcliffe* were members of a homeowner's association and parties to the development's declaration. 454 N.E.2d at 365. The declaration stated, among other terms, that the association would manage the common areas for the benefit of the homeowners, who had an easement to use the common areas within the common interest community. *Id.* at 364-65.

¶ 80 In analyzing the right of the association to sue the developer for construction defects in the common areas on behalf of its members, the Illinois court noted

> We perceive no real distinction between the buildings and the common land in the application of the public policy protecting a purchaser of a new or reasonably new home from latent defects in the building or the required amenities since the purchaser in a substantial degree must rely in either case on the expertise of the building-vendor creating the defect.

*Id.* at 365. The court explained that the "entire scheme of marketing the townhouses" included the assurance that the common areas would be deeded to the association so that the owners could enjoy "the common areas in connection with their homes." *Id.* at 366.

¶ 81     In light of this analysis, the court rejected the developer's argument that the association lacked standing because it was "neither a vendee nor subsequent vendee" and, thus, could not assert claims for breach of the implied warranty of habitability as to the common areas. *Id.* As the court reasoned, the developer's attempt to distinguish ownership of residential buildings and ownership of common areas would undercut the public policy of protecting "purchasers of new houses upon discovery of latent defects, by requiring that such defects be cured by the builder or developer who had created them." *Id.*

¶ 82    Thus, the Illinois court concluded that the association had "stated under general common law principles representational standing to assert the rights of its individual members since it has alleged an immediate, direct and substantial injury to any one of them." *Id.* at 367. Significantly, *Briarcliffe* makes no mention of the need for assignments before a homeowner's association can file suit on behalf of its members for construction defects in common areas.

¶ 83    The Florida District Court of Appeals also ruled in favor of the homeowner's association under similar facts. In *Lakeview Reserve*, the court held that a homeowner's association had standing to assert a claim for breach of the implied warranties of fitness and merchantability against a builder/developer for defects in "roadways, drainage systems, retention ponds and underground pipes" in the subdivision. *Lakeview Reserve*, 48 So. 3d at 903-04. The court rejected the developer's argument that the implied warranties did not apply to those common areas because they did not "immediately support the residences." *Id.*

¶ 84    The court reasoned that services that make a home habitable, such as roads, drainage systems, retention ponds, and underground pipes, are the types of improvements for which a

developer provides an implied warranty of fitness for a particular purpose because they "immediately support the residence in the form of essential services." *Id.* at 908-09. Like *Briarcliffe*, the *Lakeview Reserve* decision made no mention of an assignment requirement.

¶ 85 Developer and Builder contend that allowing Association to assert implied warranty claims without assignments from the townhome owners places them "in the precarious position of having two parties who allegedly have standing to pursue them" for the same defects. But simply because two parties have *standing* to bring the same claim does not mean those parties may recover the same damages in successive litigation.

¶ 86 The doctrine of claim preclusion "preclude[s] the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608-09 (Colo. 2005). "For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the

actions." *Id.* For purposes of claim preclusion, "'[p]rivity' means that a nonparty is related to a case in such a way that he or she should be regarded as a party." *Strekal v. Espe*, 114 P.3d 67, 69 (Colo. App. 2004). Under these principles, if Association, acting on behalf of the townhome owners, pursued a claim for damages arising from construction defects, the townhome owners would be precluded from later bringing a claim to recover the same damages.

¶ 87 For the above reasons, Association was not required to obtain assignments of claims from its members before it could assert claims for construction defects in the common areas. *See Heritage Vill.*, 89 P.3d at 515.

E. The Trial Court Did Not Reversibly Err by Admitting Evidence Regarding Damage in Townhomes at the Development

¶ 88 Developer and Builder assert that the trial court erred by admitting evidence that Association had not properly disclosed before the trial, testimony by witnesses whom Association had not properly designated, and Association's evidence supporting an allegedly new theory of liability. We agree that the trial court erred by allowing testimony regarding damage in a townhome that was not part of the damages that Association sought to recover, hold

35

that such error was harmless, and disagree with Developer and Builder's remaining contentions regarding the challenged evidence.

¶ 89 The evidence at trial included testimony from townhome owners about interior damage in their townhomes, including damage that was not reflected in Association's damage calculations. Developer and Builder contend that such evidence and the related argument by Association's counsel in closing argument were "salacious" and irrelevant and caused unfair prejudice to Developer and Builder.

¶ 90 "Trial courts have considerable discretion to decide evidentiary issues, so we review such decisions for an abuse of discretion." *Murray v. Just In Case Business Lighthouse, LLC*, 2016 CO 47M, ¶ 16, 374 P.3d 443, 450. We review erroneous evidentiary rulings in civil cases for harmless error. C.R.C.P. 61; *Bernache v. Brown*, 2020 COA 106, ¶ 26, 471 P.3d 1234, 1240.

### 1. Evidence Not Timely Disclosed

¶ 91 C.R.C.P. 16(f)(2)(B) states that parties must identify and exchange their lists of trial exhibits at least forty-two days before trial. C.R.C.P. 16(f)(2)(B). "Where a party fails to make pretrial disclosures, a trial court may impose appropriate sanctions,"

including the preclusion of evidence. *Mullins v. Med. Lien Mgmt., Inc.*, 2013 COA 134, ¶ 37, 411 P.3d 798, 805.

¶ 92     "[T]he sanction of evidence or witness preclusion is inappropriate if the lateness of the disclosure is harmless to the other party." *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 979 (Colo. 1999). In determining whether a late disclosure is harmless, "the question is whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence." *Id.*

¶ 93     Developer and Builder first point to Association's late disclosure of photographs of the interior of three townhomes, one owned by Ms. Rumfelt and two others with different owners. The trial court admitted the interior photos of Ms. Rumfelt's townhome, but not the photographs of the other townhomes. As noted above in Part I, Association argued that the damage in the Rumfelt townhome resulted from Builder's defective construction of the common areas and included the cost of repairing such damage in its overall damage calculations. Association's expert's report on the cost of repairing the construction defects for which Association

sought damages included the cost of repairing damage in Ms. Rumfelt's townhome.

¶ 94    The late disclosure of the photographs of the interior of Ms. Rumfelt's townhome did not deprive Developer and Builder of the opportunity to defend against claims involving that townhome. Association timely disclosed its intention to seek damages for construction defects in the Rumfelt townhome.  Developer and Builder do not explain how the untimely disclosure of the photographs of Ms. Rumfelt's townhome prejudiced them, given Association's timely disclosure that it was seeking to recover the cost of repairs to that townhome.  And because the trial court did not admit the photographs of townhomes other than that of Ms. Rumfelt, we need not consider Developer and Builder's arguments regarding photographs of those townhomes.

2.    Witness Testimony Not Properly Disclosed

a.    Testimony Regarding Townhomes Not at Issue

¶ 95    Developer and Builder assert that the trial court erred by allowing the jury to hear the testimony of townhome owners besides Ms. Rumfelt, even though Association did not seek to recover the cost of repairing the damage in those individuals' townhomes.  We

agree regarding the testimony of townhome owner Judith Copeland but hold that the admission of her testimony was harmless.

¶ 96 When reviewing the trial court's determinations of relevance, admissibility, probative value, and prejudicial effect of evidence, "we afford the evidence its maximum probative weight and its minimum prejudice" and review only for an abuse of discretion. *Settle v. Basinger,* 2013 COA 18, ¶ 64, 411 P.3d 717, 728.

¶ 97 As noted above, Association sought damages for alleged construction defects in only one townhome — that owned by Ms. Rumfelt. But, before trial, Association announced its intention to call as witnesses the owners of other townhomes, including Alice Ulam, Debra Drew, and Ms. Copeland (collectively the other owners) — to describe damage in their respective townhomes. In its initial disclosures, Association generically identified "all current or former owners" as persons with information about construction defects in the development and attached a list of all the then-owners of townhomes. Association did not identify the other owners it intended to call to the witness stand until the day before trial, although it had identified Ms. Copeland's husband as a possible witness two weeks earlier.

¶ 98    Because the trial court did not allow Ms. Drew to testify due to Association's failure to disclose her in a timely manner, we need not address Developer and Builder's arguments regarding Ms. Drew. In addition, although Association disclosed Ms. Ulam as a witness the day before trial, Developer and Builder did not contemporaneously object to her testimony and, thus, Developer and Builder did not preserve their objection to that testimony. *See Antolovich*, 183 P.3d at 600.

¶ 99    Thus, we focus on Ms. Copeland's testimony. The trial court allowed Ms. Copeland to testify based on Association's assertion that she would address damage in her townhome that was a "manifestation[]" of the defects affecting the entire community. The court held that testimony about damage in individual townhomes resulting from construction defects in the common areas was relevant "in determining whether or not there is damage and what those damages are . . . ." The court conceded that this testimony "is perhaps more direct and a bit more personal" than the expert testimony, "but it is certainly not calculated to inflame the jury . . . [it] is testimony that puts a human element to the injuries that the plaintiff is claiming."

40

¶ 100   The court took steps to ensure that the jury understood that the testimony about damage in individual townhomes did not expand the scope of the damages that Association indicated it was seeking to recover.  For example, when Association sought to introduce evidence of damage in a townhome other than that of Ms. Rumfelt, the court explained to the jury that the damage in that townhome "won't be part of any damage award" and that any award to Association "will be limited . . . to what's listed in the cost of repairs."  As noted above, the cost of repairs did not include the cost of repairing damage in any individual townhome other than Ms. Rumfelt's townhome.

¶ 101   We agree with Developer and Builder that Ms. Copeland's testimony was irrelevant because the damage she described was not part of the damages Association sought to recover.  The evidence of the damage in the Copeland townhome did not make Association's calculation of the cost of repairing the defects in the common areas and Ms. Rumfelt's townhome more or less accurate.  *See* CRE 401; *Radcliff Props. Ltd. P'ship, L.L.L.P. v. City of Sheridan*, 2012 COA 82, ¶¶ 36-37, 296 P.3d 310, 317 (holding that trial court did not err in

declining to admit photographs that did not go to a disputed issue at trial).

¶ 102     We conclude, however, that the admission of Ms. Copeland's testimony about the damage in her townhome was harmless because it did not affect the substantial rights of Developer and Builder. *See Bernache*, ¶ 26, 471 P.3d at 1240. The trial court instructed the jury that its award of damages must be based on and limited to the damages that Association sought from Developer and Builder. On appeal, "[w]e must presume the jury understood and followed these instructions." *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1202 (Colo. App. 2009). Because Developer and Builder do not point us to evidence that the jury awarded damages for the cost of repairing Ms. Copeland's townhome, we presume that the jury followed the trial court's instruction.

¶ 103     Developer and Builder contend that the trial court further erred by allowing Association, the day before trial, to substitute Ms. Copeland for her husband, whose name appeared on Association's initial witness list. Two weeks after it disclosed Mr. Copeland as a witness, Association informed Developer and Builder that Ms. Copeland would be providing the same testimony for which

Association had designated her husband — testimony about damage in their jointly owned townhome.

¶ 104    Developer and Builder do not explain how the substitution of Ms. Copeland for Mr. Copeland prejudiced them.  They do not argue that they would have cross-examined Mr. Copeland any differently from their actual cross-examination of Ms. Copeland, or that they deposed Mr. Copeland and were prejudiced by allowing Ms. Copeland — whom they had not deposed — to testify in his place.

¶ 105    For these reasons, we agree with the trial court that Developer and Builder were not prejudiced through the substitution of Ms. Copeland for her husband.  Thus, the trial court did not abuse its discretion by allowing the substitution of Ms. Copeland for her husband.

b.    The References to Owners of Other Townhomes in Association's Opening Statement

¶ 106    Developer and Builder contend that Association's counsel's references in his opening statement to the anticipated testimony of Ms. Copeland and Ms. Drew prejudiced them because Association did not timely disclose the alleged damage in their townhomes or the cost of repairing such damage.

¶ 107 The purpose of opening statements is "to inform the fact finder of the evidence which may be offered to support the claims of the parties." *Melton ex rel. Melton v. Larrabee*, 832 P.2d 1069, 1071 (Colo. 1992). They are usually an "outline[] of anticipated proof," but are not a recitation of the facts themselves. *Id.* In considering whether remarks in an opening statement are prejudicial, the trial judge "is in a pre-eminent position to determine the potential effects of the allegedly prejudicial statements on the jurors and thus his judgment will only be overturned upon an abuse of discretion." *People v. Jacobs*, 179 Colo. 182, 187, 499 P.2d 615, 618 (1972).

¶ 108 Here, the trial court instructed the jury, at the outset of trial and before its deliberations, that opening statements are not evidence and that it could only consider the evidence presented at trial. If the court gives an instruction regarding an opening statement, "[a]bsent a contrary showing, it is presumed that the jury understood the instruction[] and heeded [it]." *Id.*

¶ 109 Further, although Association's counsel referenced Ms. Copeland's and Ms. Drew's testimony in its opening statement, the trial court allowed Ms. Copeland, but not Ms. Drew, to testify at trial. As discussed above in Part II.E.2.a, we hold that the court did

44

not reversibly err in admitting Ms. Copeland's testimony because the admission of her testimony was harmless. And because the court did not allow Association to call Ms. Drew to the witness stand, we assume that the jury understood and followed the trial court's instruction that it could not consider as evidence the reference to Ms. Drew in Association's opening statement. For these reasons, the trial court did not abuse its discretion by not striking Association's counsel's references to Ms. Copeland's and Ms. Drew's testimony in Association's opening statement.

### 3. The Alleged New Theory of Liability

¶ 110 Finally, Developer and Builder allege that the trial court erred by allowing Association to "pivot to a new undisclosed theory of liability" during trial. We disagree.

¶ 111 As discussed above in Part II.C.1, counsel for Association informed the court during the trial, outside the presence of the jury, that it intended to move to amend its complaint to add a claim regarding the alleged damage that Builder caused to the roadways that Combest constructed by driving construction vehicles over them. While Developer and Builder are correct that Association did not plead this theory in its complaint, there is no indication in the

record that Association ever moved to add a claim regarding damage to the roadways that Combest constructed, much less that the trial court granted Association leave to plead such a claim. More significantly, as discussed above in Part II.C.2, Association did not present any evidence of damage to those specific roadways. The jury never heard evidence that Builder damaged a roadway that Combest had constructed, only that use of heavy equipment can damage roadways generally.

¶ 112 Further, Developer and Builder did not contemporaneously object to the testimony of Association's witnesses concerning roadway damage or the comments about roadway damage in the closing argument of Association's counsel. Thus, even if Association presented evidence that Builder had specifically damaged a roadway that Combest had constructed, Developer and Builder did not preserve the argument for appeal.

F. The Trial Court Did Not Err by Allowing Testimony Referencing Nonparties

¶ 113 Developer and Builder contend that the trial court erred by allowing evidence and argument referencing two nonparties — Challenger Homes and Brian Bahr — and that such evidence and

46

argument suggested that Developer and Builder had greater financial resources than they actually possessed. Developer and Builder seem to say that Association subtly provided the jurors with the message that Challenger and Bahr had "deep pockets," were linked to Developer and Builder, and could easily pay a substantial damage award. Because we cannot find any reference to Challenger's and Bahr's financial status in the record, we are not persuaded.

¶ 114 While Developer and Builder are correct that statements "go[ing] outside of the record to appeal to passion and prejudice . . . regarding a defendant's ability to pay can be sufficient to warrant granting a new trial," we agree with the trial court that Association made no such statements here. *See Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 369 (Colo. App. 2000).

¶ 115 The references to Challenger and Bahr at trial included the following:

- Ms. Copeland's statement that Challenger was the entity to which she made warranty claims and that made repairs at the development after Builder went out of business;

- Ms. Ulam's testimony that Developer initially identified itself to her as "an offshoot" of Challenger;

- testimony from Rich Vorwaller, a former employee of Developer and a witness for Association, who said that he worked for Challenger, he had reported to Bahr when he worked for Developer, and Bahr was president of Builder and an owner of Challenger and Developer;

- Ms. Rumfelt's testimony that, upon purchasing her townhome, she understood that Challenger was the builder, she communicated with Challenger during the construction of her townhome, and Challenger performed warranty repairs at her townhome;

- testimony from Tom Streelman, a townhome owner, who said that Challenger's name appeared on an exhibit he was reviewing, but that someone had crossed out the name;

- statements by Association's counsel in closing argument that reminded the jury of the testimony of townhome owners regarding the entity to which they had made warranty claims and that the jury should not speculate

about what "Rivers and Brooktree and Challenger or whoever else, were doing with that land";

- testimony of Association's expert witness Edward Fronapfel that an exhibit contained the signature of Bahr in his capacity as president of Builder; and

- testimony of Steven Vasas, a former employee of Builder and a witness for Association, that an exhibit identified Bahr as president of Builder.

¶ 116    Notably, Association did not introduce any evidence regarding Challenger's or Bahr's finances, financial status, or ability to pay a judgment. And none of the references noted above "go[es] outside of the record" or appeals to passion or prejudice. *See Salazar*, 5 P.3d at 369. These statements do not suggest that the jury should base its verdict on Developer's or Builder's relationship to Challenger or to Bahr. Thus, the trial court did not abuse its discretion in admitting the evidence and allowing the arguments regarding Challenger and Bahr.

## III.    Conclusion

¶ 117    The judgment is affirmed.

JUDGE NAVARRO and JUDGE TOW concur.

49