**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 3, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BEVERLY CRIBARI,

      Plaintiff - Appellant/Cross -
Appellee,

v.

ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY,

      Defendant - Appellee/Cross -
Appellant.

No. 19-1270
(D.C. No. 1:16-CV-02450-NRN)
(D. Colo.)

_____

BEVERLY CRIBARI,

      Plaintiff - Appellee,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

      Defendant - Appellant.

No. 19-1343
(D.C. No. 1:16-CV-02450-NRN)
(D. Colo.)

_____

BEVERLY CRIBARI,

      Plaintiff - Appellee,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

      Defendant - Appellant.

No. 19-1425
(D.C. No. 1:16-CV-02450-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Plaintiff Beverly Cribari sued her underinsured motorist insurance provider for breach of contract and bad faith. A jury found in Defendant Allstate Fire & Casualty Insurance Company's favor on all counts. Plaintiff appealed the district court's denial of her summary judgment motion as well as various pretrial and trial rulings—Case No. 19-1270. Post-trial, Defendant sought to claw back a payment it made under a reservation of rights. After Plaintiff refused to return the check and filed a notice of appeal, Defendant filed a motion for leave to amend its pleadings. The district court denied that motion and Defendant appealed that ruling—Case No. 19-1343. Finally, the Clerk of Court for the United States District Court for the District of Colorado entered a cost award for Defendant. After the Clerk declined to tax any expert costs beyond a forty dollar per day appearance fee, Defendant sought review of the Clerk's award, which the district court denied. Defendant filed a second appeal on this issue—Case No. 19-1425.

Our jurisdiction arises under 28 U.S.C. § 1291. We affirm the district court's decisions in Case Nos. 19-1270, 19-1343, and 19-1425.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

An underinsured motorist ran a red light and struck Plaintiff's vehicle. Plaintiff suffered a wrist injury in the collision and settled with the underinsured motorist for his $100,000 policy limit. She later filed a claim with Defendant—her underinsured motorist ("UIM") insurance provider. Her UIM policy placed obligations on Plaintiff to assist in an investigation of the claim—specifically the policy required her to attend a medical examination, provide a medical authorization, and cooperate with Defendant's investigation.

Four months after Plaintiff's filing of the UIM claim, Defendant asked Plaintiff's counsel to return a signed medical authorization and list of Plaintiff's treating providers. After not hearing from Plaintiff's counsel, Defendant offered to resolve the claim for $35,000, noting that it did not have evidence of future treatment expenses. Defendant asked about Plaintiff's surgical options, costs, and how long Plaintiff would need to miss work. Plaintiff's counsel responded that Plaintiff required surgery. The parties met in person and agreed that Plaintiff would see her surgeon to discuss her impairment rating, future surgical options, a cost estimate for the potential future surgeries, and any resulting complications. Defendant again asked for a medical authorization and a wage loss authorization. After a third request, Plaintiff's counsel provided the authorizations.

Plaintiff's counsel provided Defendant with correspondence that purported to summarize Plaintiff's surgeon's review of Plaintiff's condition. Although it listed two surgical possibilities, the correspondence lacked an impairment rating, surgical

3

cost estimate, or an estimate of how long Plaintiff would need to take off work. Defendant re-evaluated the claim and offered to resolve it for $100,000. The offer accompanied a note that Defendant still did not have the disability rating, cost estimates for future surgeries, or corresponding wage loss. Despite the earlier meeting, Plaintiff's counsel responded that she did not anticipate Defendant needing that information. She asked whether Defendant would pay for another appointment to obtain that information. Defendant agreed. And Plaintiff's counsel acknowledged she would schedule an examination "to obtain the information Allstate needs to evaluate her claim, including the impairment rating, the physician charges for the future surgery, and the amount of time she is likely to miss from work."

Plaintiff retained a vocational rehabilitation forensic expert to develop a life care plan and analyze the cost and impact of Plaintiff's future surgeries. She also retained a second expert to estimate her future medical expenses—a figure the expert calculated at $341,700. Plaintiff did not disclose these experts until litigation.

Plaintiff's surgeon eventually sent Defendant a report that provided an impairment rating and suggested Plaintiff may require surgery, but it did not provide a cost estimate for any surgery or describe the potential complications and time Plaintiff would need to recuperate. The surgeon later testified he could have provided a cost estimate, but that Plaintiff's counsel did not request one. Defendant reassessed the claim without the information it had requested and without knowing about the two expert reports. Defendant offered $115,000.

4

Plaintiff did not respond to the offer. Rather, Plaintiff believed Defendant refused to make her a reasonable offer for underinsured motorist benefits and sued Defendant in Colorado state court alleging, among other things, breach of contract and bad faith. Defendant removed the civil action to the United States District Court for the District of Colorado. In its Answer, Defendant asserted an affirmative defense to the breach of contract claim that Plaintiff failed to cooperate with Defendant's investigation and comply with the policy's terms. Defendant later explained in discovery that it raised a failure to cooperate affirmative defense because Plaintiff failed to provide it with a cost estimate for a possible future surgery and associated wage loss. Defendant's Rule 30(b)(6) corporate representative also testified that Defendant suffered prejudice because it could not investigate the claim and incurred expenses to defend the claim in litigation.

After a year of litigation, the parties mediated the case. Before that mediation, one of Defendant's claims adjusters made an entry in Defendant's claim log. That entry examined the claim, analyzed potential liability and Plaintiff's potential damages, referenced the mediation, and noted the policy limits of $250,000. That adjuster noted a "gross tort value" up to policy limits. The day of the mediation, one of Defendant's managers authorized up to $250,000 to resolve the claim and noted that authorization in the claim log.

The parties did not settle the litigation. But following the mediation, Defendant drafted a $250,000 check to Plaintiff "on the possibility that it was owed." The adjuster who authorized the check testified he had no intention of advancing the

5

funds to Plaintiff. Defendant transmitted the check to its counsel, who determined that Defendant did not have to pay the funds because Defendant authorized the $250,000 to resolve all claims in the lawsuit, Defendant was still investigating the UIM claim, and Defendant had asserted a coverage defense. As a result, Defendant's counsel did not forward the check to Plaintiff.[1]

Defendant made an offer of judgment for $200,000. Plaintiff rejected the offer. Defendant ultimately completed its investigation of Plaintiff's claim during litigation and determined that, but for her failure to cooperate, Plaintiff's claim would be worth the full $250,000 policy limits. Defendant paid Plaintiff and her counsel $250,000, but reserved the right to claw back the $250,000 should a jury determine that Plaintiff had failed to cooperate in Defendant's claim investigation.

The district court denied the parties' cross motions for summary judgment on Defendant's failure to cooperate defense holding that a reasonable jury could conclude that Plaintiff cooperated in the investigation of the claim, but that a reasonable jury could also conclude that Plaintiff did not cooperate in the investigation. The district court also determined that Defendant's $250,000 payment did not render its defense moot and its ability to adjust the claim followed by its conditional payment did not preclude it from arguing prejudice from Plaintiff's alleged failure to cooperate.

---

[1] Before trial, Defendant's accounting department mailed a letter to Plaintiff asking why she had not cashed the original $250,000 check that she had never received—a routine function of Defendant's accounting department if an insured has not cashed an issued check.

In the proposed Pre-Trial Order, Defendant alleged that Plaintiff, through her counsel, had intentionally "setup" Defendant for a bad faith case so she could obtain additional damages. Also before trial, both parties filed motions in limine. Plaintiff sought to preclude Defendant from presenting a "set-up" defense—in other words, Plaintiff desired to prohibit Defendant from arguing that her counsel knowingly and intentionally lied, concealed, and cheated Defendant for her own financial gain. The district court denied that motion. Plaintiff also sought to limit Defendant's failure to cooperate defense to issues contained in Defendant's discovery response. Plaintiff objected to this defense because she claimed that Defendant failed to plead it with particularity in its answer. The district court also denied Plaintiff's motion to limit Defendant's failure to cooperate defense. Plaintiff next sought to preclude Defendant from presenting a stealth fraud defense—meaning that Defendant could not argue that Plaintiff did not just merely fail to cooperate, but actively concealed information from Defendant. The district court denied in part and granted in part Plaintiff's motion to preclude Defendant from presenting a stealth fraud defense, stating, "[t]here will be no mention of fraud." Defendant moved to allow the jury to know the measure of damages available in a bad faith claim in order to understand Plaintiff's motive for allegedly sabotaging Defendant's investigation of her claim. The district court allowed the jury to hear that additional damages were available because of the bad faith claim. Defendant additionally sought to prevent Plaintiff from referencing mediation, issuance of a potential settlement check, and settlement negotiations. The district court excluded reference to mediation preparation, issuance

7

of the $250,000 potential settlement check, and settlement negotiations under Federal Rule of Evidence 408.

At trial, the district court tasked the jury with deciding three claims: breach of insurance contract, unreasonable delay or denial of insurance benefits, and bad faith breach of insurance contract. At the close of evidence, Plaintiff moved for a judgment as a matter of law on Defendant's failure to cooperate defense and her breach of contract claim. The district court denied that motion. A jury found for Defendant on all three claims. Although the jury heard evidence on Plaintiff's alleged failure to cooperate, and although the district court permitted the jury to consider that evidence in deciding whether Plaintiff should prevail, the district court, over Defendant's objection, did not give the jury an instruction asking if Plaintiff failed to cooperate. Defendant asked Plaintiff to return the funds paid. Plaintiff declined. So Plaintiff and her counsel remain in possession of the $250,000, despite losing on all three affirmative claims against Defendant at trial. And Defendant does not have an express jury finding that Plaintiff failed to cooperate, despite its request for one.

After the district court entered judgment for Defendant, Plaintiff appealed several of the district court's rulings, including its denial of the motion for summary judgment.

Post-judgment, Defendant sought to amend its answer to add counterclaims to obtain a modified court judgment that would order Plaintiff to return the $250,000 that Defendant paid under the reservation of rights. The district court denied

8

Defendant's motion, determining that it lacked jurisdiction to address the issue because Plaintiff had filed her notice of appeal. Alternatively, the district court determined that it would not have allowed Defendant to amend its answer. It reasoned the jury could have found that Defendant acted reasonably, properly investigated the claim, and properly paid Plaintiff the $250,000 for her injuries without finding that she had failed to cooperate or had breached her contractual obligations. Defendant filed an appeal on this issue.

Also post-judgment, the Clerk of Court for the United States District Court for the District of Colorado taxed costs in the amount of $16,247.21 against Plaintiff. Defendant sought review of the Clerk's award, arguing that the Clerk erred in refusing to tax expert fees above the $40 per day witness appearance fee. Defendant argued that because it had served Plaintiff with an offer of judgment, which she refused, it was entitled to fees under Colo. Rev. Stat. § 13-17-202 because she did not recover a judgment in excess of the offer. The district court disagreed, stating the $250,000 reservation of rights payment effectively amounted to a judgment. Defendant filed a second appeal on this issue.

II.

We first address Plaintiff's appeal—No. 19-1270—which presents five issues for review. First, whether the district court erred in failing to grant summary judgment for Plaintiff on either the failure-to-cooperate defense or Plaintiff's breach-of-contract claim. We review the district court's denial of summary judgment de novo. Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1229 (10th Cir. 1995) (citation

9

omitted).  Second, whether the district court erred in its interpretation of the policy's failure-to-cooperate language.  We review a district court's interpretation of policy language de novo.  Lexington Ins. Co. v. Precision Drilling Co., L.P., 951 F.3d 1185, 1194 (10th Cir. 2020) (citation omitted).  Third, whether the district court erred in allowing Defendant to present its "set-up" defense theory.  We review evidentiary rulings for abuse of discretion.  Cavanaugh v. Woods Cross City, 718 F.3d 1244, 1249 (10th Cir. 2013) (citation omitted).  Fourth, whether the district court erred in excluding certain evidence under a theory of mediation privilege.  We review a district court's rulings on motions in limine for abuse of discretion.  Id.  And fifth, whether the district court erred in allowing Defendant to withdraw its stipulation that it owed Plaintiff some amount of UIM benefits.  District courts have "broad discretion in determining whether to hold a party to a stipulation."  Wheeler v. John Deere Co., 935 F.2d 1090, 1098 (10th Cir. 1991) (citation omitted).

## A.

Plaintiff argues that the district court erred in denying her motion for summary judgment and motion for judgment as a matter of law on Defendant's failure-to-cooperate defense or Plaintiff's breach of contract claim.  We first address whether Plaintiff preserved this issue because of her failure to make a post-judgment motion for judgment as a matter of law and whether we can hear the appeal of the denial of her summary judgment motion after a trial on the merits.  Because we determine that we have jurisdiction to review a portion of the denial of the summary judgment motion, we next turn to whether an insurer can, under Colorado law, make a payment

10

of benefits under a reservation of the right to claw back the payment. And, if so, whether that payment constitutes a confession of an insured's breach of contract claim so that it moots an affirmative defense to that claim. Third, we discuss Plaintiff's argument that Defendant failed to show that it was prejudiced by her alleged failure to cooperate. We then address Plaintiff's contention that because no policy provision required her to provide estimates of surgical costs and future wage loss, her conduct did not violate a specific policy provision and Defendant cannot allege failure to cooperate. Fifth, we turn to whether Colorado law required Defendant to give Plaintiff notice of its intent to assert the cooperation defense, the basis for that defense, and the opportunity to cure. Sixth, we discuss whether Defendant failed to plead its affirmative defense with particularity in violation of Federal Rule of Civil Procedure 9(c). Finally, we address Plaintiff's argument that the district court's decision to allow Defendant to present the failure-to-cooperate defense and instructing the jury on the defense was not harmless.

1.

"Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges—prior to submission of the case to the jury, and after the verdict and entry of judgment." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399 (2006). Plaintiff challenged the sufficiency of the evidence under Rule 50(a) prior to submission of the case to the jury. The district court denied Plaintiff's motion. Plaintiff, however, failed to make a motion under Rule 50(b) to

11

renew her challenge to the sufficiency of the evidence after the jury verdict and entry of judgment. Defendant contends Plaintiff failed to preserve her ability to appeal the denial of her motions for summary judgment and directed verdict by not filing a post-judgment Rule 50(b) motion. We agree.

Without a Rule 50(b) motion, we lack the power to direct the district court to enter judgment contrary to the one it permitted to stand. Id. at 400–01 (citing Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 218 (1947)); see also Copar Pumice Co., Inc. v. Morris, 639 F.3d 1025, 1030 (10th Cir. 2011) (stating that a party cannot appeal its entitlement to judgment as a matter of law unless that party renews its motion under Rule 50(b)). Thus, Defendant correctly argues that Plaintiff cannot appeal the district court's denial of her Rule 50(a) motion.

Plaintiff contends that "well-established law" supports the proposition that a party may appeal rulings on Rule 50(a) motions based on the interpretation of legal questions. But the cases she cites for that proposition—Copar Pumice Co., Inc., 639 F.3d 1025 and Haberman v. Hartford Insurance Group, 443 F.3d 1257 (10th Cir. 2006)—state that summary judgment, not a Rule 50(a) motion, provides the only way to preserve these "purely legal questions." So we look not to her Rule 50(a) motion, but to the summary judgment proceeding. A party generally may not appeal a district court's denial of a summary judgment motion. Ortiz v. Johnson, 562 U.S. 180, 184 (2011). But when the parties do not dispute the material facts and the district court bases its denial of summary judgment on its interpretation of a purely legal question,

12

a party may appeal such a decision after a final judgment. Haberman, 443 F.3d at 1264 (citations omitted).

Our jurisdiction turns on whether the district court denied the summary judgment motions on purely legal grounds. Although the district court identified various genuine issues of material fact in denying summary judgment, Plaintiff contends that the district court made five determinations as a matter of law: (1) Defendant permissibly made a payment subject to a reservation of rights that did not render moot, waive, or foreclose its failure-to-cooperate defense; (2) a jury could reasonably find that Plaintiff had breached the general contractual obligation of cooperation without specific policy language requiring Plaintiff to provide the estimated cost of future medical treatment and lost wages; (3) Defendant had no requirement to provide notice and opportunity to cure; (4) Plaintiff's alleged conduct constituting the failure to cooperate could constitute substantial and material prejudice; and (5) Defendant pleaded the failure-to-cooperate defense with sufficient particularity. As noted in the previous paragraph, we have jurisdiction to review purely legal issues the district court decided on summary judgment. Haberman, 443 F.3d at 1264. For the reasons discussed below, we conclude each issue, except for the second, constitutes a purely legal issue we may review. We now turn to the merits.

2.

Colorado has not spoken on the issue of whether an insurer may make a payment to an insured subject to a reservation of rights and then seek to claw back or recoup its payment. We hold that under Colorado law an insurer may do so.

The district court relied on our previous recognition that, under Colorado law, an insurer has an entitlement to reimbursement of defense costs if a court determines that insurer had no duty to defend. Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1091–92 (10th Cir. 2010); see also Mt. Hawley Ins. Co. v. Casson Duncan Constr. Inc., 409 P.3d 619, 623 (Colo. App. 2016) (citing Valley Forge). In relying on that holding, the district court did not blaze a new trail. Indeed, the District of Colorado previously extended our holding in Valley Forge to determine that "an insurer may pay an insured under a reservation of rights and then seek to recoup its payment." Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n, No. 14-cv-3417, 2016 WL 1321507, at *4 (D. Colo. April 5, 2016) (citing Valley Forge). And this extension is a natural application of the rule we divined in Valley Forge.

We agree with the district court—and predict the Colorado Supreme Court would hold—that a reservation of rights does not destroy the insured's rights or create new rights for the insurance company. Rather, the reservation of rights "preserves that to which the parties had originally agreed." Mut. of Enumclaw v. Harvey, 772 P.2d 216, 220 (Idaho 1989). Indeed, just like the policy at issue in Valley Forge, the policy here contains no contractual language referencing a right to

14

recoupment. Instead, the policy language provides that if Defendant and the insured do not agree on the right to benefits and the amount payable, a court of competent jurisdiction will resolve the disagreement. The policy also sets forth that Defendant has a right to decline to pay a claim where the insured causes material prejudice to Defendant by failing to cooperate. And Defendant also has the right to have that dispute settled by a court. Thus, Defendant had the right to pay Plaintiff subject to a reservation of rights and to claw back that payment should a court determine that Plaintiff had no entitlement to the payment.

Because we answered the prior question in the affirmative, we now turn to whether that payment constitutes a confession of Plaintiff's breach of contract claim so that it moots Defendant's affirmative failure-to-cooperate defense to that claim. We hold that it does not. Defendant made clear when it paid Plaintiff the policy limits that it reserved the right to claw back the payment. Cases Plaintiff cites that conclude the opposite lacked a reservation of rights letter. See Peden v. State Farm Mut. Auto. Ins. Co., No. 14-cv-982, 2018 WL 3496735 (D. Colo. July 20, 2018) (holding that the insurer could not assert a cooperation defense where it paid the entire insured's UIM claim without a reservation of rights). Here, the reservation of rights letter shows that Defendant did not confess Plaintiff's breach of contract claim.

Nor does the fact that Defendant eventually completed its investigation moot Defendant's affirmative failure-to-cooperate defense. In Colorado, an insured's failure to cooperate breaches the contract if the insurer suffers a material and substantial disadvantage. State Farm Mut. Auto. Ins. Co. v. Secrist, 33 P.3d 1272,

15

1275 (Colo. App. 2001) (citation omitted). Often, the prejudice from a failure to cooperate manifests in the insurer's failure to complete an investigation. But the prejudice here does not result from Defendant's inability to complete an investigation. Rather, the alleged failure to cooperate forced Defendant to defend a bad faith suit. The Colorado Court of Appeals, albeit in an unpublished decision, acknowledged this type of prejudice. See Windhorst v. State Farm Mut. Auto. Ins. Co., No. 11CA1045, 2012 WL 1884652 (Colo. App. May 24, 2012) (providing that the insurer receiving medical records did not cure the prejudice because by that time the insurer was defending against claims based on its alleged failure to timely process and pay UIM benefits); see also Pilgrim v. State Farm Fire & Cas. Ins. Co., 950 P.2d 479, 486 (Wash. Ct. App. 1997) (concluding insurer suffered prejudice when insured failed to provide financial information in connection with a first party claim because insurer could not evaluate the validity of the insurance claim without financial documents from insured). Quite simply, under this theory, had Plaintiff cooperated, Defendant would have had the relevant information to make an informed offer prior to Plaintiff's filing of the bad faith suit. Because Defendant claimed she did not, it asserted that it could not make such an offer and had to litigate a bad faith claim. Thus we agree with the district court that Defendant's payment of the claim, subject to a reservation of rights, did not moot, waive, or extinguish Defendant's failure-to-cooperate defense.

16

3.

Plaintiff contends that Defendant failed to demonstrate that it was prejudiced by Plaintiff's alleged failure to cooperate. As discussed in the previous section, the district court properly held that a failure to cooperate that results in a bad-faith case can be prejudicial. Plaintiff couched whether prejudice exists as a legal question, arguing that in allowing the jury to determine whether Defendant was prejudiced materially, the district court impliedly ruled that the conduct that Defendant claimed constituted a failure to cooperate could result in substantial and material prejudice. But rather than argue the law, Plaintiff's briefing focus on the sufficiency of the evidence. Plaintiff argues that the facts presented to the district court at summary judgment and at trial could not possibly support a finding of prejudice. The district court held in its order denying summary judgment that a jury reasonably could find that Plaintiff complied with the terms of the policy, but also held that a jury could find that she did not comply with those terms. Plaintiff contests the latter. For instance, she asserts that no evidence showed that Plaintiff or her counsel withheld any material information, that no evidence showed Defendant's inability to do a reasonable investigation, and that evidence overwhelmingly demonstrated that Plaintiff did not prevent Defendant from investigating Plaintiff's claim, particularly the cost of the future surgery or associated future wage loss—all of which go to the sufficiency of the evidence.

Indeed, whether Plaintiff's conduct constituted noncooperation presented a question of fact and of the sufficiency of the evidence. And perhaps the evidence of

17

noncooperation or of prejudice in this case was so lacking that the district court erred in failing to grant summary judgment or Plaintiff's Rule 50(a) motion. But we are powerless to make that determination because of the procedural posture of this case. Unitherm, 546 U.S. at 405. We will not second guess the district court's determination. As we discussed earlier, Plaintiff's failure to make a Rule 50(b) post-judgment motion for judgment as a matter of law precludes her sufficiency of the evidence argument on appeal. Id.

4.

Plaintiff next argues that no policy provision required her to provide estimates of future surgical costs and future wage loss. That lack of language, Plaintiff contends, means her conduct could not have violated a specific policy provision and, therefore, Defendant cannot assert a failure-to-cooperate defense. But we conclude the district court did not err in determining that a jury could reasonably find that Plaintiff failed to comply with the cooperation clause.

Plaintiff contends the policy explicitly required her only to provide a release authorization, which she did, and to attend a medical examination if requested, which Defendant did not. Plaintiff relies on a Colorado Court of Appeals case to argue that the district court and Defendant have held her to a standard of conduct not set forth in or required by the policy—Ahmadi v. Allstate Insurance Company, 22 P.3d 576 (Colo. App. 2001). In Ahmadi, the insurer requested examinations under oath of three insureds, in accordance with the policy's requirement that they submit to such an examination upon request. Id. at 577. The policy also included a standard

18

cooperation clause. Id. The insureds, not all English speakers, appeared together for the examinations and refused to allow the insurer to separate them from one another. Id. at 577–78. The insurer insisted on separation to no avail, and the examinations did not take place. Id. at 578. Because they would not submit separately to examination, the insurer alleged failure to cooperate. Id.

On appeal, the insureds argued that by showing up together, they complied with the policy language. The Colorado Court of Appeals agreed. In reaching that conclusion, the court held that the policy "[did] not mandate that the examination to which a claimant must submit shall be held outside the presence of other claimants." Id. The Colorado Court of Appeals held that "we must give effect to the plain meaning of the policy terms" and "we are not at liberty to rewrite the policy." Id. (citations omitted). Thus, "had [the insurer] desired to impose [separation of examinees], it could have done so by an express term in the policy." Id. (citation omitted). So the court rejected the insurer's claim that the refusal to sequester violated the examination clause. Id. at 579.

The Ahmadi court also rejected the insurer's argument that failing to submit to sequestration violated the cooperation clause. It held that "because the policy here contains a requirement for an examination under oath, but does not impose an additional requirement that the examination be held separately and without any other claimants being present, we conclude that the trial court erred in holding that the claimants had breached the cooperation clause." Id. at 580. The court's holding that the insureds had not violated the cooperation clause was, therefore, because they had

19

not violated the examination clause. Plaintiff ignores the fact that her case does not involve a second, more specific clause, such as an examination clause.

Defendant's cooperation defense arises from Plaintiff's conduct, not the failure to provide information alone. The evidence shows that Plaintiff's counsel agreed to provide this information, never refused Defendant's requests for the information, and led Defendant to believe she was cooperating with the investigation. We agree with the district court that Defendant could have reasonably relied on Plaintiff's promises to provide information and that Plaintiff's subsequent failure to provide that information without informing Defendant that she refused to do so could constitute noncooperation. The district court did not err by sending the question to the jury.

5.

Plaintiff next contends that both the law and Defendant's policy required that Defendant provide her notice of its intent to assert the cooperation defense and the basis for that defense as well as a chance to cure before it asserted she failed to cooperate. But Plaintiff cites no Colorado law to support her contention. Instead, Plaintiff cites a Tenth Circuit case applying Oklahoma law and a dissent from the Colorado Supreme Court.

The Tenth Circuit case—State Farm Fire and Casualty Insurance Company v. Payne, 982 F.2d 529 (10th Cir. 1992) (unpublished table decision)—involved an insured's pre-suit failure to cooperate, of which the insurer knew before the suit. Here, Defendant did not know about Plaintiff's failure to cooperate before the suit because Plaintiff, in Defendant's words, "presented a pretense of cooperation." Thus

20

the prejudice to Defendant did not manifest, and the defense did not arise, until Plaintiff sued. The Colorado case—Francom Building Corporation v. Fail, 646 P.2d 345 (Colo. 1982) (en banc)—is likewise inapposite. Plaintiff cites the dissent in that case, which interpreted and applied the notice requirement of Colorado's forcible entry and detainer statute. Plaintiff acknowledges that Fail did not involve insurance law but argues that the Colorado Supreme Court has imposed notice and opportunity to cure requirements in other forfeiture contexts, so it would in this context as well. Maybe so. But Plaintiff overlooks Defendant's argument that inclusion of the defense in the answer timely and sufficiently put Plaintiff on notice because the prejudice of the failure to cooperate did not manifest until after Plaintiff sued. Thus, the defense did not apply until after Plaintiff sued.

As to the policy, trial testimony showed that Defendant provides insureds notice by a reservation of rights letter when it learns of a potential failure to cooperate before suit is filed. But when an insured sues, Defendant provides such notice in a responsive pleading. Trial testimony also revealed that the policy does not require a chance to cure. Rather, Defendant may provide such an opportunity.

As we discussed above, in Colorado, an insured's failure to cooperate breaches the contract if the insurer suffers a material and substantial disadvantage. Secrist, 33 P.3d at 1275. Here, the district court held that "a jury could reasonably conclude that [Defendant] suffered a material and substantial disadvantage by having its investigation delayed and being sued for bad faith as a result." We agree with the district court. The prejudice from Plaintiff's failure to cooperate did not arise until

21

Plaintiff filed the suit. And at that point, Defendant could not possibly give Plaintiff a chance to cure. The only possible way to provide notice after suit is to respond in a pleading.

No authority supports Plaintiff's position. Here the suit itself was the prejudicial result of Plaintiff's failure to cooperate. The district court did not err in determining that neither the law nor the policy required Defendant to provide pre-suit notice and opportunity to cure.

6.

We now turn to Plaintiff's contention that Defendant failed to plead the affirmative defense with particularity. Plaintiff argues Defendant violated Rule 9(c)'s command that when denying a condition precedent has occurred or been performed, a party must do so with particularity. But Plaintiff's argument assumes that a cooperation defense is a conditions-precedent defense. We need not determine whether a cooperation defense is a conditions-precedent defense because whether Rule 9(c)'s standard or the general pleading standard for affirmative defenses applies is immaterial here. And that is because, put plainly, Defendant insufficiently pleaded its affirmative defense in failing to identify what policy provision Plaintiff violated or how she had violated the provision. Given that, the material questions we must consider are whether Plaintiff waited too long to move to strike the affirmative defense and whether the district court correctly rejected Plaintiff's arguments—questions we answer in the affirmative.

Plaintiff never moved to strike the defense under Rule 12(f)—the proper vehicle to challenge the pleading of a defense. Plaintiff had a chance to conduct discovery into the defense. And Plaintiff had the ability to fully litigate the defense at summary judgment and at trial. Courts, both in this Circuit and in others, regularly decline to entertain Rule 9 arguments at the summary judgment stage. See Bank of Albuquerque, N.A. v. Dykes, Civ. No. 07-44, 2008 WL 11417171, at *2 (D.N.M. Jan. 16, 2008) ("the Court nevertheless declines to rule against Defendants on the basis of this alleged procedural shortcoming. Plaintiff did not move to strike Defendants' answer on the pleadings, or ask for a more particular statement of allegations."); Burton v. R.J. Reynolds Tobacco Co., 181 F. Supp. 2d 1256, 1262 n.5 (D. Kan. 2002) ("To the extent defendants are suggesting that plaintiff's fraudulent concealment claim should be stricken for failure to comply with Rule 9(b), the court's rejects this belated challenge."); Davsko v. Golden Harvest Prods., Inc., 965 F. Supp. 1467, 1474 (D. Kan. 1997) ("Here, defendants answered plaintiff's complaint without raising any objection under rule 9(b). Defendants cannot argue almost a year later that plaintiff failed to plead fraud with particularity."); United Nat. Records, Inc. v. MCA, Inc., 609 F. Supp. 33, 39 (N.D. Ill. 1984) ("Defendants have had a sufficient opportunity to respond to plaintiffs' charges as contemplated by Rule 9(b). Accordingly, defendants' contentions regarding plaintiffs' failure to comply with Rule 9(b) have been waived."); Power Application & Mfg. Co. v. Moscow Agri-Indus., Inc., No. 86-1656-PFK, 1992 WL 363684, at *4 (D. Kan. Nov. 10, 1992) (the plaintiff, in its motion for summary judgment, "originally argued that

23

[the defendant's] complaint does not meet the standards of the Federal Rules by pleading fraud with any particularity." In response, the defendant "correctly pointed out that by waiting to make this motion until after the pretrial order and much discovery, [the plaintiff] has effectively waived any right to obtain dismissal of the fraud claim on procedural grounds.").

We agree with Defendant that Plaintiff raised the issue too late in the process. She suffered no prejudice and the district court did not err in refusing to consider her belated arguments. Failure to plead with specificity is not a matter for summary judgment.

7.

Finally, Plaintiff argues that we must remand this case because the district court erred in permitting Defendant to present the failure-to-cooperate defense and that instructing the jury on that defense was not harmless. She asserts that the court instructed the jury on the elements of a failure to cooperate and to consider that defense as to all claims, which resulted in a smear campaign against Plaintiff that lasted throughout the trial. Plaintiff posits that Defendant supported none of its argument surrounding the failure to cooperate by competent evidence of facts showing a legally viable failure to cooperate. This argument, too, must fail. We previously concluded that the district court did not err in any of the above legal rulings. Thus the district court did not err in allowing Defendant to present its failure to cooperate defense. We also concluded that Plaintiff's failure to make a Rule 50(b) motion precludes us from conducting any evidentiary review for sufficiency at trial

24

or in search of a genuine issue of fact at summary judgment. Thus, we hold the district court did not err in refusing to grant summary judgment in Plaintiff's favor on either Defendant's affirmative cooperation defense or on Plaintiff's breach of contract claim. Because we find no error, we do not consider Plaintiff's argument that the error was not harmless.

B.

Plaintiff also argues that the district court erred in its interpretation of the policy's failure-to-cooperate language. She asserts that the provision can apply only to third-party claims, not first-party claims, and that the relevant policy provision is ambiguous. The district court did not address these arguments. Defendant contends that Plaintiff did not preserve this issue for appeal. We agree that Plaintiff raises these arguments for the first time on appeal. Therefore, the district court did not have the opportunity to rule on them.

We rarely consider an issue raised for the first time on appeal. Tele-Commc'ns, Inc. v. C.I.R., 104 F.3d 1229, 1232 (10th Cir. 1997) (citations omitted). The reasoning is simple enough. Review of issues parties did not raise below would require "additional evidence gathering and findings; would undermine the need for finality in litigation and conservation of judicial resources; would often have this court hold everything accomplished below for naught; and would often allow a party to raise a new issue on appeal when that party invited the alleged error below." Id. And our refusal to consider these newly raised issues "is particularly apt when dealing with an appeal from a grant of summary judgment." Id. At that point, the

25

district court considers only opposing legal theories—not factual disputes. Id. We are not a second-shot forum. Id. at 1233. Thus, we require a party to present an issue to the district court before raising that issue on appeal. Id.

But what about vague, arguable references to a point in the district court proceedings? We have held that such passing references do not preserve an issue on appeal. Id. We will not address new arguments on appeal regardless of "whether an appellant is attempting to raise 'a bald faced new issue' or 'a new theory on appeal that falls under the same general category as an argument presented at trial.'" McDonald v. Kinder-Morgan, Inc., 287 F3d 992, 999 (10th Cir. 2002) (quoting Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 722 (10th Cir. 1993)).

So we turn to whether Plaintiff preserved her argument. In Plaintiff's opening brief, she states that she preserved this argument at oral argument on her summary judgment motion. That oral argument lasted about two hours. And Plaintiff raised the ambiguity issue one time, arguing, "Allstate is relying 100 percent upon a cooperation clause that does not apply in a first party case and it does not apply in a first party case because it's ambiguous, because it's overbroad and it doesn't make any logical sense." In context, the discussion before and after that statement centered on interpreting Windhorst and the definition of prejudice—not on the ambiguity of the provision. So the district court's failure to rule on ambiguity, yet make a ruling on Windhorst and whether Defendant had argued a cognizable prejudice, is no surprise. This mere mention in the district court oral argument does not preserve either the question of the applicability of the provision or of its ambiguity. See Folks

26

v. State Farm Mut. Auto. Ins. Co., 784 F.3d 730, 741 (10th Cir. 2015) (providing that "vague, arguable references to a point in the district court proceedings do not preserve the issue on appeal" (quoting Lyons, 994 F.2d at 721)).

Only after Defendant argued that Plaintiff did not raise this argument in her eighty-three-page summary judgment briefing did Plaintiff cite the record in her appellate reply brief. Plaintiff raised her applicability argument in a footnote in her summary judgment motion:

> This general cooperation language is applicable only to third party claims where an insured is being defended by the insurer – not in first party claims where the insured is making a claim to her insurer, as is the case here. . . . The absurdity that would result in applying the general cooperation clause language in a first party claim is readily apparent when considering that the clause requires the insured to cooperate with the insurer in the insurer's attempts to "settle" the claim – read literally, this would require the insured to "accept" any "settlement offer" made by the insurer, as refusing to do so would not assist the insurer in settling the claim. This would be an absurd result.

(internal citation omitted). In the introduction of her response to Defendant's motion for summary judgment, Plaintiff argued:

> The Allstate narrative in fact shows a course of conduct of an adjuster making what appear to be "social" requests for information, which Allstate then turns into a claim of a contract violation, resulting in forfeiture, based upon a "general" duty to cooperate with an "investigation", in a cooperation section clearly intended to apply to 3rd party liability claims (cooperate in the "defense" of lawsuits), and not the specific first-party cooperation requirements such as providing medial authorizations and medical examinations. Allstate's extremely overbroad interpretation and assertion of cooperation clause violations violates Colorado public policy.

Later in the same response, while discussing her specific-provision argument, Plaintiff recites, verbatim, the footnote quoted above. Finally, in her reply in support

of her motion for summary judgment, Plaintiff said, "an insurer cannot deny a claim for failure to cooperate where the alleged failure is not in violation of a specific non-ambiguous requirement of the insurance policy, and only then after a reasonable request." But Plaintiff recited that proposition of law for her specific-provision argument, addressed below. She did not specifically argue that the provision was ambiguous.

We conclude Plaintiff forfeited this argument. Her passing reference to applicability and ambiguity at oral argument before the district court did not preserve this issue. Nor did her single footnote and two sentences of argument in her summary judgment briefing. These arguments, raised before the district court in a perfunctory and undeveloped manner, parallel the kind of arguments we have refused consistently to take up in the past. See Folks, 784 F.3d at 741 (noting that "minimal development of an issue in the district court could well result in forfeiture" (citation omitted)).

Because Plaintiff forfeited this argument by not raising it before the district court, we review for plain error. Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011) (Gorsuch, J.). Plaintiff, however, did not argue for plain error in her brief, even in the alternative. Our "long-standing practice has been to review newly raised (but not waived) legal arguments under what substantively amounts to (and what we have more recently described as) the plain error standard." Id. To be sure, "[a]ffording plenary appellate review to newly raised legal theories would do much to undermine this adversarial and appellate order." Id. at 1130.

28

Plaintiff has not tried to show how her new legal theory satisfies the plain error standard. "And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court." Id. at 1131 (citation omitted). As a result, we will not consider this issue.

## C.

The district court allowed Defendant to present a theory of the case that Plaintiff's conduct "set-up" Defendant for a bad-faith lawsuit. Plaintiff argues the district court erred because this argument constituted an unalleged affirmative defense not recognized by Colorado law.[2] She contends that under Colorado law, an insured's motivations or financial interests are irrelevant and do not present a defense for an insurer alleged to have breached its duties to the insured. She argues that Defendant's theory constitutes "an accusation of deceit sounding in fraud" and that Defendant was trying to make the case for insurance fraud. Defendant, on the other hand, asserts that this "set-up" theory is not an affirmative defense. Rather, the argument is a theory to explain Plaintiff's and her counsel's conduct and the pre-suit interactions between the parties. We agree with Defendant. The theory is not an

---

[2] Plaintiff also again relies on Rule 9(b)'s particularity requirement for an allegation of fraud and her allegation that Defendant did not raise this defense until a proposed final pretrial order in April 2019, right before trial. Plaintiff asserts she was not able to investigate the grounds for the defense or know of the basis for it until that time. But Defendant thoroughly alleged this defense in a November 2017 proposed final pretrial order, which gave Plaintiff enough time to conduct discovery into the theory, including through her deposition of Defendant's Rule 30(b)(6) representative.

official "set-up" defense but is simply Defendant's proffered motive for Plaintiff's failure to cooperate.

Defendant's "set-up" theory is not an affirmative defense. We define an affirmative defense as a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." Black's Law Dictionary at 451 (8th ed. 2004). Defendant did not argue its theory of the case was dispositive. We agree with the district court that Defendant's setup argument—rather than constituting a defense to Plaintiff's claims—explained its theory of the case for why Plaintiff failed to cooperate.

Plaintiff directs us to case law to support her position. She cites Caldwell v. Wal-Mart Stores, Inc., 229 F.3d 1162, at *4–5 (10th Cir. 2000) (unpublished table decision), for the proposition that evidence, argument, and references to a plaintiff's financial motivation to bring a lawsuit are inappropriate absent evidence of fraud. But in that case, the plaintiff had promised that he would give his partners in a failed business some of the money from the suit against Wal-Mart. The court disallowed the evidence because it was irrelevant and unfairly prejudicial. Id. at *5. Wal-Mart did not offer the evidence as a theory of its defense but as an attack on the plaintiff's credibility and character. Plaintiff also cites Miller v. Byrne, 916 P.2d 566, 576 (Colo. App. 1995), for the proposition that an insured's motivations or financial interests are irrelevant to whether an insurer fulfilled its non-delegable duties owed in good faith to its insured. But that is not what Miller holds. The court said that the motivation or intent was not legally material or logically relevant on this record. Id.

30

Miller does not foreclose the idea that an insurer could put forth a financial motivation as their theory of the case regarding why an insured failed to cooperate. Plaintiff also references Heritage Village Owners Association, Inc. v. Golden Heritage Investors, Ltd., 89 P.3d 513, 518–19 (Colo. App. 2004), for the proposition that a court should not permit the jury to learn of the consequences for the defendant from statutory trebling penalties and that such information could create unfair prejudice. But the Colorado Court of Appeals did not draw a bright line rule in that case. Rather it stated, "we do not deem it necessary to determine whether a jury may never be advised of treble damages." Id. at 519. Its conclusion simply was that the trial court did not err by declining to instruct the jury of the trebling provision. Id.

Plaintiff's cited cases lend no support to her contention that Defendant's "set-up" theory constitutes an affirmative defense. Thus, we hold the district court did not err in allowing Defendant to present its theory of the case to the jury.

D.

We next address Plaintiff's contention that the district court erred in excluding certain evidence related to settlement of the claim. We review evidentiary rulings for abuse of discretion and the trial court's preliminary factual findings relating to the admission of evidence for clear error. United States v. Williamson, 53 F.3d 1500, 1517 (10th Cir. 1995) (citations omitted). Defendant authorized a $250,000 settlement before mediation and later drafted a $250,000 check that its counsel never provided Plaintiff. Defendant moved in limine to exclude the entries in the claim log related to the mediation and the check, the original $250,000 check, and the letter

31

from the accounting department asking why Plaintiff had not cashed the check.  The

district court held an evidentiary hearing on the issue and excluded the evidence

under Federal Rule of Evidence 408 and 403.  The district court reasoned that

Defendant prepared the entries for and in the context of the mediation and, therefore,

the check and letter were "so causally connected" to the mediation that introduction

would unduly confuse the jury.

We find no error in the district court's ruling.  Rule 408 provides that

statements made in compromise negotiation are not admissible to prove or disprove

the validity or amount of a disputed claim.  And the record the district court made at

the evidentiary hearing provides ample evidence that Defendant created the entries in

the context of and in preparation for mediation.  Indeed, Defendant created the

entries two days before and the day of the mediation and the entries reference the

mediation.  The district court did not commit clear error in its factual determination

that Defendant created the entries for mediation.  The district court likewise did not

abuse its discretion in granting Defendant's motion to exclude the ensuing check and

letter.  The district court reasoned that Defendant could explain the documents only

while discussing the mediation.  Thus, Defendant would have to explain that it issued

the documents because it authorized $250,000 to settle the litigation.

Plaintiff argues that she did not seek to offer the evidence to prove the amount

of her damages, but to prove Defendant's knowledge that her damages exceeded the

available UIM limit, that it chose not to pay the benefits it knew that it owed to gain

some strategic advantage, and Defendant's continuing bad faith.  True, Rule 408 does

32

not exclude evidence offered for another purpose. And evidence of a party's bad faith may fall under another purpose. But we do not review this issue de novo. We have said that "when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers." Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1364 (10th Cir. 1987). The district court conducted an evidentiary hearing and determined that Rule 408 barred admission of the evidence because Defendant made the entries about valuation of the claim in preparation for mediation. See Eisenberg v. Univ. of N.M., 936 F.2d 1131, 1134 (10th Cir. 1991) (explaining that Rule 408 is designed to encourage settlement of disputes). The district court's decision was reasonable, and we conclude it did not abuse its discretion in barring the evidence pursuant to Rule 408.

But the district court also believed that admission of the letter and check would confuse the jury from the relevant issues in the case and also barred it from coming into evidence under Rule 403. Again, the district court's decision was reasonable and it did not abuse its discretion. Indeed, the "risks of prejudice and confusion entailed in receiving settlement evidence are such that often . . . the underlying policy of Rule 408 require[s] exclusion even when a permissible purpose can be discerned." E.E.O.C. v. Gear Petroleum, Inc., 948 F.2d 1542, 1546 (10th Cir. 1991) (alterations in original) (citation omitted). See also Weir v. Fed. Ins. Co., 811 F.2d 1387, 1395 (10th Cir. 1987) ("Although Rule 408 does not prohibit the admission of evidence of the circumstances surrounding a settlement to prove something other than liability—such as voluntariness—many of the same concerns

33

about prejudice and deterrence to settlements exist regardless of the purpose for which the evidence is offered"). Thus, we hold the district court did not abuse its discretion in excluding the evidence under Rules 408 and 403.[3]

E.

In the scheduling order, Defendant stipulated that it owed Plaintiff some amount of UIM benefits. Specifically, "Allstate has determined that Ms. Cribari is owed compensation for her injuries, damages and losses related to the . . . collision under her underinsured motorist coverage." This stipulation did not make the final pretrial order. The district court ruled at trial that Plaintiff could not introduce the stipulation to the jury. Plaintiff contends the district court erred.

"[I]f a party waits until trial to withdraw stipulations submitted in the pretrial order, the recital of facts 'may be modified at the trial only to prevent manifest injustice.'" In re Durability Inc., 212 F.3d 551, 556 (10th Cir. 2000) (quoting United States v. Sommers, 351 F.2d 354, 357 (10th Cir. 1965)). "That standard comports with [Rule] 16, which mandates that pretrial orders 'shall be modified only to prevent manifest injustice.'" Id. "If, however, the request to withdraw or amend the stipulation is made before significant prejudice to the other parties would result, promotes important equitable and legal considerations, and is not controlled by a rule of procedure, the party seeking to withdraw

---

[3] In her reply brief, Plaintiff for the first time raises the argument that Defendant waived any Rule 408 objections by introducing evidence of settlement negotiations and offers itself. But a party waives issues and arguments raised for the first time in a reply brief. Reedy v. Werholtz, 660 F.3d 1270, 1274 (10th Cir. 2011) (citation omitted).

must simply show good reason for the request." Id. (citation omitted). See also Uranium Contracts Litigation, 570 F.2d 899, 902 (10th Cir. 1978) (holding that, where later events "reveal[ed] a need for further discovery," "we must hold that it would be inequitable to enforce an agreement against further questioning of [a key fact witness], thus closing the door to development of potentially critical facts."); Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc., 782 F. Supp. 2d 1205, 1211 (D. Colo. 2011) (finding that, where "[p]laintiffs' recent conduct . . . has caused [defendant] to question the foundation of [p]laintiffs' claims and suggested that [defendant] should look more closely at the damages," the court should relieve the defendant of a stipulation as to the amount of damages).

"Ultimately, 'the district court is vested with broad discretion in deciding whether to enforce [the] parties['] stipulation or not.'" Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1188 (10th Cir. 2018) (alterations in original) (quoting Miller v. Eby Realty Grp. LLC, 396 F.3d 1105, 1116 (10th Cir. 2005)). "A court will not always enforce the terms of a stipulation in the rigid manner that a court typically enforces the terms of a contract." Id. "Even though a court may not overlook stipulations as a matter of course, no rule of law requires a court to base the resolution of the case on stipulations of the parties." Id. (quoting O'Connor v. City & Cnty. of Denver, 894 F.2d 1210, 1226 n.12 (10th Cir. 1990)).

At the pretrial conference, the district court ruled that it would not read the stipulation at trial. The district court reasoned that Defendant no longer agreed to its previous stipulation based on Plaintiff's alleged failure to cooperate. The district

35

court said that Plaintiff could ask about the stipulation at trial, subject to potential objection. At trial, Plaintiff sought to introduce the stipulation and Defendant objected. The district court decided to exclude the stipulation, stating that the statement was not probative. Moreover, the district court found that Defendant had an explanation for the change in position and allowing Plaintiff to introduce the stipulation would be overly confusing for the jury.

The district court did not abuse its discretion in excluding Defendant's stipulation from the original scheduling order. During litigation, Defendant discovered information which altered its position on the factual basis for the stipulation. Plaintiff's introduction of the stipulation would require the jury to hear information about how parties enter into stipulations, the various types of pretrial orders, the discovery process, and the decision-making process counsel employs. Ultimately, the stipulated fact was not probative because even if Defendant at first conceded it owed Plaintiff something, newly discovered evidence uncovered in discovery explained its change in position. Allowing the jury to hear the stipulation would have only confused the jury. The district court did not abuse its discretion in excluding the stipulation.

III.

We next address Defendant's first appeal—No.19-1343—challenging the district court's denial of Defendant's motion for leave to amend or supplement its pleading and add counterclaims. We review the district court's denial of a motion for leave to amend for abuse of discretion. Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d

1185, 1195 (10th Cir. 2015) (citation omitted). But we review a district court's ruling on a jurisdictional question de novo. FDIC v. Hulsey, 22 F.3d 1472, 1479 (10th Cir. 1994) (citation omitted).

Following the jury's verdict, Defendant asked Plaintiff to return the $250,000 pursuant to the reservation of rights. After Plaintiff refused, Defendant filed a motion for leave to supplement its earlier pleading to add counterclaims for replevin, unjust enrichment, breach of contract, and conversion. Although Plaintiff had filed its notice of appeal, Defendant argued its motion was timely because it filed it "mere days after the causes of action accrued." Alternatively, Defendant said it sought to amend its pleading to conform to the evidence because the jury's verdict necessarily found that Defendant had not breached the contract, did not unreasonably delay or deny the benefits, and had not breached the contract in bad faith.

We begin our analysis with the premise that "a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously." Stewart v. Donges, 915 F.2d 572, 574 (10th Cir. 1990) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)). A party filing a notice of appeal triggers "an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Id. (quoting Griggs, 459 U.S. at 58).

The district court correctly determined that it lacked jurisdiction to decide Defendant's motion. The filing of a notice of appeal generally divests the district court of jurisdiction over the issues in the appeal. Lancaster v. Indep. Sch. Dist. No.

37

5, 149 F.3d 1228, 1237 (10th Cir. 1998) (citation omitted).  The district court, however, "retains jurisdiction over 'collateral matters not involved in the appeal.'" Id. (quoting Garcia v. Burlington N.R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987)). Defendant contends that the matters raised in its motion for leave are not involved in Plaintiff's appeal because the proposed counterclaims arose only after, and because of, the final judgment.  It argues that it became entitled to the funds under the reservation of rights only because of the jury verdict and final judgment.  We disagree with Defendant's argument that its new claims are separate from the claims it asserted during the lawsuit.  Indeed, Plaintiff's appeal included the argument that the district court should not have allowed Defendant to present the "failure to cooperate" defense to the jury.  Plaintiff also appealed whether the district court should have included that defense in the jury instructions.  Whether Plaintiff could retain the check is intertwined with the issues Plaintiff raised in her notice of appeal and is not a collateral matter not involved in the appeal.  See Garcia, 818 F.2d at 721–22 (concluding a determination of prejudgment interest was not a collateral issue where the plaintiff specifically asked permission to amend its complaint to include prejudgment interest, and the trial court granted that motion by amending the pretrial order, but the district court did not mention prejudgment interest in its final order and did not reserve the matter and the plaintiff did not ask for reconsideration but instead filed a notice of appeal).  The district court did not err in its conclusion that it lacked jurisdiction to consider Defendant's motion for leave to amend.

38

IV.

Lastly, we address Defendant's second appeal—No. 19-1425—appealing a portion of the district court's order denying Defendant's motion for review of the Clerk's costs and fee award. We review an award of costs for abuse of discretion, but whether costs provisions apply is a legal question we review de novo. Marx v. Gen. Revenue Corp., 668 F.3d 1174, 1178 (10th Cir. 2011) (citations omitted).

Defendant contends that the district court erred in applying Colorado's offer of settlement statute, Colo. Rev. Stat. § 13-17-202(1)(a)(II). That statute provides that

> If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff. . . .

Defendant made an offer of settlement for $200,000. Plaintiff rejected that offer. And Plaintiff did not obtain a judgment in excess of $200,000. But Plaintiff retained the $250,000 check that Defendant paid to her under a reservation of rights. The district court, reasoning that "the result of the judgment in the case is a net monetary gain for Mrs. Cribari of $50,000 above the offer of settlement," refused to award Defendant actual costs under the Colorado offer of settlement statute.

After the parties briefed their appeal, but more than four months before oral argument, we issued Stender v. Archstone-Smith Operating Tr., 958 F.3d 938 (10th Cir. 2020). In that opinion, we held that "a valid Federal Rule of Civil Procedure governs over a state procedural rule if the two rules 'answer the same question.'" Stender, 958 F.3d at 940 (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate

39

Ins. Co., 559 U.S. 292 (2010)). We specifically held that Rule 54's prevailing party costs provision displaced Colorado's rule on prevailing party costs because those provisions "answer the same question." Id. at 945.

Relevant to this issue, there exists a Federal Rule of Civil Procedure that is closely analogous to § 13-17-202. Federal Rule of Civil Procedure 68(d) provides: "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). Before we reach the question of whether the district court erred in refusing to apply § 13-17-202 because it found Plaintiff effectively recovered $50,000 more than Defendant offered, we must determine whether Rule 68(d) governs over § 13-17-202—thus mandating application of the federal rule.

Comparing Rule 68(d)'s language with § 13-17-202's language, we conclude that they answer the same question *in this case*, where Defendant made the offer of judgment. The state and federal rules are, therefore, in conflict. See Goldberg v. Pac. Indem. Co., 627 F.3d 752, 756 (9th Cir. 2010) (noting that because both Arizona Rule of Civil Procedure 68 and Federal Rule of Civil Procedure 68 could apply and result in a different award, the two rules are in conflict (citing Gil de Rebollo v. Miami Heat Assoc., 137 F.3d 56, 66 (1st Cir. 1998)). Because Colorado's offer of settlement statute and Rule 68(d) answer the same question in this case, federal law preempts state law and federal law limits Defendant's witness fees. See Stender, 958 F.3d at 945.

40

In the posture of this case, then, the district court did err by applying Colorado's offer of judgment statute and not Federal Rule of Civil Procedure 68(d). But its ultimate conclusion that Defendant could not recover its "actual costs" in excess of the $40 per day allowed under federal law was correct. See 28 U.S.C. § 1821(b) (limiting a witness's attendance fee to $40 per day). So, we affirm the district court's costs and fee award, albeit on other grounds. [4]

V.

For the reasons set forth above, we AFFIRM the district court's judgment in appeal No. 19-1270, AFFIRM the district court's judgment in appeal No. 19-1343, and AFFIRM the district court's judgment in appeal No. 19-1425.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[4] Because Rule 68(d) preempts application of the state rule, we do not reach Defendant's argument that the district court's novel interpretation of § 13-17-202 contradicted the statute's text. We further recognize that no party argued that Rule 68 preempted Colorado's statute—an issue which arose after the parties completed briefing the issues in this case. And although affirming on legal grounds not considered by the trial court is disfavored, any remand instructing the district court to award costs pursuant to the plain language of § 13-17-202 would simply perpetuate error.

41